610 P.2d 477

MADDUX & SONS, INC., an Arizona Corporation, Appellant,

v.

The TRUSTEES OF ARIZONA LABORERS, TEAMSTERS AND CEMENT MASONS, LOCAL 395 HEALTH AND WELFARE TRUST FUND; the Trustees of Arizona Laborers, Teamsters and Cement Masons Local 395 Pension Fund; the Trustees of Arizona Laborers Joint Training Fund; and the Trustees of Arizona Teamsters Joint Training Fund, Appellees.

No. 1 CA–CIV 4128.

Court of Appeals of Arizona, Division 1, Department A.

April 15, 1980.

---

1. A.R.S. §§ 42–1401 through 42 1425.

Gerald L. Diddy, P.C. by Gerald L. Diddy and Alice A. Wright, Phoenix, for appellant.

McGillicuddy & Rich, P.C. by Joseph T. Rich, Jr., Phoenix, for appellees.

## OPINION

DONOFRIO, Judge.

This appeal relates to a contract action instituted by the Trustees of Arizona Laborers, Teamsters and Cement Masons, Local 395 Health and Welfare Trust Fund; The Trustees of Arizona Laborers, Teamsters and Cement Masons Local 395 Pension Fund; The Trustees of Arizona Laborers Joint Training Fund; and the Trustees of Arizona Teamsters Joint Training Fund (Trust Funds), plaintiffs-appellees against Maddux & Sons, Inc., an Arizona corpora-

tion (Maddux), defendant-appellant, for the collection of money claimed due under a labor agreement between the parties. Appellant counter-claimed for a refund of contributions paid into the Trust Funds on the basis that they were the result of a mistake. On cross-motions for summary judgment the trial court granted summary judgment in favor of Trust Funds on its claim and denied Maddux's motion for summary judgment on the counterclaim. We affirm the decision of the trial court on both rulings.

Maddux contends that it was not bound to make contributions to the Trust Funds but did so by mistake and is therefore entitled to a refund. Its theory is premised upon the contention that coverage under the Master Labor Agreement (MLA) is limited to contractors whose employees perform construction work. Maddux argues that it is a supplier, not a contractor, and that its employees are not engaged in construction work.

Trust Funds content that the MLA binds all signatories without exclusive limitation to contractors so long as the employees of the signatory perform construction work. Trust Funds argue that Maddux was a signatory whose employees performed construction within the MLA definition of that term and, in the alternative, that Maddux is bound under the agreement by estoppel.

The factual context of this case follows. On or about February 1, 1966, R. L. Maddux dba Maddux & Sons, a sole proprietorship became a signatory to the MLA.[1] At that time Maddux & Sons operated two businesses—(1) a licensed contracting business and (2) a ready-mix supply business. In 1971 Maddux & Sons, Inc., was formed and incorporated by the persons in control of Maddux & Sons, the sole proprietorship.

The capital and equipment of the previous business were transferred to the corporation and the management remained substantially the same. From and after incorporation the contracting business stopped operation. The ready-mix business continued in the manufacture, sale and delivery of various materials used in the construction industry including ready-mix cement, sand, gravel and crushed rock. Maddux has and continues to use its own employees to drive its ready-mix cement trucks on deliveries and to do miscellaneous labor to keep the equipment operational. From June 1959 until incorporation, Maddux & Sons made various payments to appellees Trust Funds for union employees but not for non-union employees. From the date of incorporation through 1975, Maddux & Sons, Inc., made various contributions for union employees until advised by its counsel that said payments were not required to be made. Appellees made demand for payment of amounts claimed due and owing under the MLA and filed suit because no payment was made. The trial court granted judgment in favor of the Trust Funds in the total amount of $29,053.32.

On appeal Maddux acknowledges that its predecessor, R. L. Maddux dba Maddux & Sons (the sole proprietorship) signed the MLA and concedes that it is bound to make contributions to the Trust Funds if the conditions of the agreement are met.[2]

The threshold question we must resolve is whether the MLA binds all signatories or is limited in scope to the class of signatories who are "contractors." We hold that by the terms of the MLA it is binding on all signatories whose employees perform construction work as defined in the agreement.

1. This agreement has been automatically renewed including all amendments and extensions to the agreement by the express terms of the MLA because Maddux did not exercise its right to terminate.

2. Under the successor concept of labor law, a new corporation that is the alter ego and continuation of a sole proprietorship is bound by a labor agreement entered into by the sole proprietorship to the extent its activities come within the terms of that agreement. *See generally:* EDWARD E. SCHULTZ dba SCHULTZ PAINTING & DECORATING CO. AND PAINTERS LOCAL UNION NO. 1, ETC., 1973 CCH 202 NLRB 23.

The relevant portion of the designation of parties clause of the MLA provides as follows:

THIS AGREEMENT entered into . . by and between members of [certain construction contractor associations] . . who are signatories hereto, and employers, non-member, who are signatory hereto, parties of the first part, hereinafter referred to as the contractors.[3]

■ We reject appellant's contention that the preamble to the MLA mandates a conclusion that it is only binding on contractors.[4] A preamble or recital to a contract is an expression of the reasons for the transaction, *Wells-Stewart Const. Co. v. Martin Marietta Corp.*, 103 Ariz. 375, 442 P.2d 119 (1968), and "should be considered in determining the intent of the parties as expressed in the entire document, and on occasion . . . may be a most impor-

tant indication of the parties' intent." *Bowen v. Sil-Flo Corp.*, 9 Ariz.App. 268, 277, 451 P.2d 626, 635 (1969). While courts should consider the preamble to an agreement in determining the intent of the parties, they are controlling only in a limited situation. In *Jamison v. Franklin Life Ins. Co.*, 60 Ariz. 308, 317, 136 P.2d 265, 269 (1943), our Supreme Court opined:

The rule of construction, where there is a conflict in the recitals and the operative parts of a contract, is well settled and is stated in *Williams v. Barkley*, 165 N.Y. 48, 58 N.E. 765, 767, as follows:

"If the recitals are clear and the operative part is ambiguous, the recitals govern the construction. If the recitals are ambiguous and the operative part is clear, the operative part must prevail. If both the recitals and the operative part are clear, but they are inconsistent with each

---

**3.** The full text of that portion of the MLA provides:

MASTER LABOR AGREEMENT
LABOR AGREEMENT BETWEEN THE ASSOCIATED GENERAL CONTRACTORS, ARIZONA CHAPTER: ARIZONA BUILDING CONTRACTORS, BUILDING CHAPTER, ASSOCIATED GENERAL CONTRACTORS; PHOENIX ASSOCIATION OF HOME BUILDERS; ARIZONA MASONRY CONTRACTORS ASSOCIATION; ASSOCIATED PLASTERING CONTRACTORS OF ARIZONA AND BUILDING AND CONSTRUCTION TRADES UNIONS.
THIS AGREEMENT entered into this 26th day of July, 1965, by and between the members of the ASSOCIATED GENERAL CONTRACTORS, ARIZONA CHAPTER; ARIZONA BUILDING CONTRACTORS, BUILDING CHAPTER, ASSOCIATED GENERAL CONTRACTORS; PHOENIX ASSOCIATION OF HOME BUILDERS; ARIZONA MASONRY CONTRACTORS ASSOCIATION; AND ASSOCIATED PLASTERING CONTRACTORS OF ARIZONA, who are signatories hereto, and employers, non-members, who are signatory hereto, parties of the first part, hereinafter referred to as the Contractors.
and the
Laborers' District Council of the State of Arizona including Locals 383, 479, and 556;
Construction Locals in the State of Arizona of the United Brotherhood of Carpenters and Joiners of America including Locals 326, 445, 471, 857, 906, 1061, 1089, 1100, 1153, 1216, 1538, 2096, 2763 and 1914 (Millwright);

Locals Nos. 83 and 310 affiliates of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America;
Operative Plasterers' and Cement Masons' International Association, Local Union 395; who are signatory hereto, for themselves, for their various Craft Councils and Local Unions which have jurisdiction over the work in the territory hereinafter described, parties of the second part, hereinafter referred to as the Unions.

**4.** The preamble provides:
WITNESSETH:
PURPOSES:
WHEREAS, the CONTRACTORS are engaged in contract construction work in Arizona; and
WHEREAS, in the performance of its present and future contracting operations the CONTRACTORS are employing and will employ large numbers of workmen represented by various UNIONS, and
WHEREAS, the CONTRACTORS desire to be assured of their ability to procure employees for all of the work which they may do in the area hereinafter defined as Arizona in sufficient numbers and skill to assure continuity of work in the completion of their construction contracts; and
WHEREAS, it is the desire of the parties to establish uniform rates of pay, hours of employment and working conditions which shall be applicable to all workmen performing any work for the contractors, as such work is hereinafter defined in Article III of this Agreement.
NOW, THEREFORE, in consideration of the premises and of the respective covenants and agreements of the parties hereto, each of which

other, the operative part is to be preferred. [Citing cases]."

■ In the instant case the operative portion of the agreement is controlling. Article 1 of the MLA [5] provides in relevant part:

A. That this Agreement shall apply to and cover all employees of the contractors employed to perform or performing construction work as such construction work is more particularly defined hereinafter in Article 2 of this Agreement.

When this paragraph is read in *pari materia* with the designation of parties clause discussed *supra*, it is clear that the agreement applies to both signatory members of the enumerated construction contractor associations and signatory employers who are non-members of those enumerated associations provided, in either case, that the signatory employer's employees perform construction work as that term is defined in the agreement. Thus, the language contained in the preamble is consistent with the operative portion of the contract when the term "contractor" is read as defined in the agreement as opposed to the common meaning of that word Specifically, signatories are only bound to make contributions under the agreement when they are engaged in construction work.

■ The next question we must resolve is whether Maddux's employees performed construction work as defined in the agreement. We hold that they did perform construction work.

The definition of construction work contained in the MLA is of sufficient breadth to include the operations of Maddux.[6] At all times material to this action, Maddux was engaged in the manufacturing and sale of materials used in the construction industry. Maddux used its own employees and trucks to deliver ready-mix cement to construction sites. Further, the trucks and other equipment were maintained and repaired by Maddux employees so appellant could manufacture and deliver its products and materials to the construction sites. These activities are expressly within the MLA definition of construction work because the operations were incidental to construction, improvement or modification of structures and involved the operation, maintenance and repair of equipment and vehicles used in connection with its operations.

Appellants contend that *Drivers, Salesman, Etc. Local No. 695 v. N. L. R. B.*, 361 F.2d 547 (D.C. Cir. 1966), requires a contrary conclusion. They argue that the DRIVERS opinion is dispositive because of the language to the effect that "ready-mix

shall be interdependent, IT IS HEREBY AGREED:

5. This language is taken from the 1973–76 MLA and is different only in numbering from the prior MLA.

6. Work Description. *The construction of,* in whole or in part, *or the improvement or modification* thereof, *including any* structures or *operations which are incidental thereto,* the assembly, *operation, maintenance and repair of all equipment, vehicles and other facilities used in connection with the performance of the aforementioned work and services, and including, but not limited to,* the following types or classes of work:

202-Work Description. Street and highway work grading and paving, mechanical land leveling, excavation of earth and rock, grade separations, elevated highways, viaducts, bridges, abutments, retaining walls, subways, airport grading, surfacing and drainage, electric transmission line and conduit projects, water sup-

ply, water development, reclamation, irrigation, drainage and flood control projects, water mains, pipe lines, sanitation and sewer projects, dams, tunnels, shafts, aqueducts, canals, reservoirs, intakes, channels, levees, dikes, revetments, quarrying of breakwater or rip-rap stone, foundations, pile driving, piers, locks, dikes, river and harbor projects, breakwaters, jetties and dredging, warehouses, shops and yards, railroads and power plants, *the construction, erection, alteration, repair, modification,* demolition, *addition or improvements in whole or in part of any building structure,* including oil and gas refineries, *and incidental structures, also including any* grading, excavation, or *similar operations which are incidental thereto, or the installation, operation, maintenance and repair of equipment, and other facilities used in connection with the performance of such building construction.* (Emphasis Supplied)

drivers do not engage in on-site construction work" but rather their activities merely constitute the "final act in the delivery process." We disagree and find that case distinguishable.

The impact of the *Drivers* case is limited to the context in which the action arose. The case involved a charge of an unfair labor practice and the resolution that "ready-mix drivers do not engage in on-site construction work" was based upon a unique statutory scheme that does not apply to the case at bar. In *Drivers*, a general contractor filed an unfair labor practice charge against Local 695 of the Teamsters Union and Madison Employers Council whose members engaged "in the business of manufacture, sale, and distribution of ready-mix concrete and other building material and supplies." The basis of the charge alleged that the Teamsters and Madison Employers Council had entered into a contract in violation of § 8(e) of the National Labor Relations Act.[7] The court held the portion of the contract[8] wherein the employer agreed not to discipline employees who engaged in secondary boycott types of activities void as violative of § 8(e). Further, the court specifically rejected the claim of Madison Employers Council that it was exempt from coverage under § 8(e) because it came within the "work to be done at the site of the construction" proviso.[9] The purpose of the construction site proviso is to avoid or minimize job site tension when non-union laborers are in frequent and relatively close contact with union laborers by allowing these employers to protect their employees engaged in secondary boycott types of activities. The holding in *Drivers* was based upon that court's view that the activities of the ready-mix truck drivers posed little danger of the friction the proviso sought to avoid.

It is clear that the precedent value of *Drivers* is confined to the context in which the case arose. Even if we were to accept that court's decision as a general principle of law that the ready-mix business does not constitute on-site construction work, we would still hold that Maddux was bound to make contributions under the MLA. The reason we would so hold is because the MLA does not limit coverage to "on site" construction and because Maddux's activities clearly come within the MLA definition of construction work.

We affirm the summary judgment of the trial court for the foregoing reasons and finding them dispositive decline discussion of the other theories raised by the litigants.

FROEB, P. J., and EUBANK, J., concur.

---

7. 29 U.S.C. § 158(e) referred to as Section 8(e) provides in material part:

(e) It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible and void . . . .

8. No employee shall be subject to discipline by the Employer for refusal to cross a picket line or enter upon the premises of another employer if the employees of such other employer are engaged in an authorized strike.

9. That proviso to § 8(e) states:

Provided, That nothing in this subsection shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work . . . .