690 P.2d 83

**ARIZONA LABORERS, TEAMSTERS AND CEMENT MASONS LOCAL 395 HEALTH AND WELFARE TRUST FUND, a Trust; and Arizona Laborers, Teamsters and Cement Masons Local 395 Pension Trust Fund, a Trust; Laborers Joint Training Fund, a Trust; and Teamsters Joint Training Fund, a Trust, Plaintiffs-Appellees,**

v.

**HATCO, INC., an Arizona corporation, Defendant-Appellant.**

**No. 1 CA–CIV 6101.**

Court of Appeals of Arizona,
Division 1, Department B.

June 7, 1984.

Reconsideration Denied July 11, 1984.

Review Denied Oct. 30, 1984.

Joseph T. Rich, Jr. and Ward & Keenan, Ltd. by Gerald Barrett, Phoenix, for plaintiffs-appellees.

R. Douglas Zirkle, Tucson, for defendant-appellant.

## OPINION

CORCORAN, Judge.

Three questions are presented in this appeal:

1. Does the mere fact of agreement between signatories to the Master Labor Agreement (MLA) that "owner-operators" are employees for the purposes of determining the employer's contributions to the various union trust funds (Trust Funds) suffice to make the owner-operators employees notwithstanding § 2(3) of the National Labor Relations Act (NLRA), 29 U.S.C. § 152(3)?

2. Did the trial court err in finding that because the owner-operators were employees in fact the employer was required to make contributions to the Trust Funds for hours they worked?

3. Did the trial court err in finding that certain employees were performing covered work requiring employer contributions to the Trust Funds?

After a trial to the court, the trial court found the employer liable for contributions required under the MLA. Judgment was entered accordingly. We believe that each of the questions presented must be answered "No," and therefore affirm the judgment.

## FACTS

Appellant, Hatco, Inc. (Hatco) engages in the business of hauling rock and other materials from one construction site to another. Hatco primarily uses its own employees and trucks, but also uses "owner-operators," who own their own trucks and lease their trucks and services to Hatco in accordance with the rules and regulations of the Arizona Corporation Commission.

Hatco was a signatory to a labor contract entitled Master Labor Agreement (MLA) entered into by several Arizona construction unions and Arizona contractors. There are two MLAs relevant to this appeal, one covering July 9, 1976 to May 31, 1979, and the other June 1, 1979 to May 31,

1982. The MLAs are substantively similar as they relate to the issues in this case.

The various Trust Funds conducted an audit of Hatco covering January 1977 through December 1980. The auditor determined that Hatco owed $42,294.15 to the Trust Funds. Upon Hatco's refusal to pay this sum, the Trust Funds filed a complaint to enforce the MLA. After trial, the court awarded the Trust Funds $39,426.15, plus interest until paid. Each party was required to bear its own attorneys' fees and costs. Hatco timely filed its notice of appeal from the judgment. On appeal Hatco does not dispute that any of the hours claimed were worked by the persons cited in the audit, but rather questions whether Hatco is obligated to make contributions to the Trust Funds on behalf of those persons.

■■■ The Trust Funds filed their complaint in state court in accordance with § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185 (LMRA). *See Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962); *Bates v. Foremost-McKesson, Inc.,* 392 So.2d 389 (La.1980). An employer's failure to pay required contributions to a union pension fund is a violation of the bargaining agreement. *E.g., International Union (UAW) v. Cardwell Mfg. Co., Inc.,* 416 F.Supp. 1267 (D.Kan.1976); *Maddux & Sons, Inc. v. Trustees of Arizona Laborers,* 125 Ariz. 475, 610 P.2d 477 (App.1980). While state courts have concurrent jurisdiction in such matters, substantive federal law must govern the interpretation and application of terms of the MLA. *Spain v. Houston Oilers, Inc.,* 593 S.W.2d 746 (Tex.Civ.App. 1979).

### I

■■■ The first issue is whether the signatories to the MLA may, by the terms of that agreement, treat owner-operators as employees (versus independent contractors) thereby requiring the employers to make contributions to the Trust Funds for those owner-operators irrespective either of any factual basis for such treatment or the

provisions of the NLRA. The Court of Appeals for the Ninth Circuit recently affirmed a federal district court's holding that an MLA was controlled by the NLRA requirements that contributions be made only for actual "employees" *as defined in § 2(3) of the NLRA. Joint Council of Teamsters v. Associated Gen. Contractors,* 520 F.Supp. 3 (C.D.Cal.1980), *aff'd per curiam,* 662 F.2d 531 (9th Cir.1981), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1718, 72 L.Ed.2d 139 (1982). Thus, the terms of the MLA which define "employees" must comport with the requirements of the NLRA. We must, therefore, resolve the remaining two issues which require that we interpret the MLA to determine both what it says in its relevant provisions and whether those provisions satisfy or violate the requirements of the NLRA.

### II

The first of the two remaining interpretive issues requires us to determine whether the MLA requires that Hatco make contributions for hours worked by owner-operators and, if so, is the specification in the MLA that owner-operators are employees consistent with the NLRA.

■■■ The threshold question here is whether the employer may be held to an agreement to contribute for owner-operators where it has agreed with the union that it shall do so. A pension plan reached as the result of collective bargaining and embodied in an agreement is a contract and enforceable according to its terms. 60 Am. Jur.2d *Pensions and Retirement Funds* § 74 at 951 (1972). Words in a collective bargaining agreement should be given their reasonable meaning. *Penn Packing Co., Inc. v. Amalgamated Meat Cutters,* 497 F.2d 888 (3rd Cir.1974). The rule of contract construction that language should not be interpreted so as to render it illusory or meaningless is equally applicable to labor agreements. *See Retail Clerks Int'l v. NLRB,* 510 F.2d 802 (D.C.Cir.1975).

Paragraph A–201.12 of the MLA included in the Special Craft Working Rules specifically applicable to Teamsters states: ·

When a piece of equipment is operated by its owner and is used on work covered by this Agreement, said owner shall be an employee of the Contractor or subcontractor, and shall be covered by all terms and conditions of this Agreement.

Article 20 of the MLA requires the contractors to pay specified amounts for each hour "worked by employees covered hereunder." Thus, it appears that the contract clearly requires contributions for hours worked by the owner-operators.

Hatco, however, contends that the owner-operators are *in fact* independent contractors, not employees, and therefore may not legally be covered by the MLA. Hatco asserts that controlling federal law, *see Local 24 v. Oliver*, 358 U.S. 283, 79 S.Ct. 297, 3 L.Ed.2d 312 (1959), provides that an independent contractor cannot be an employee. Hatco relies on § 2(3) of the NLRA, which states in part:

The term "employee" ... shall not include ... any individual having the status of an independent contractor.

Hatco argues that any contractual provision to the contrary is unenforceable, even if the employer and the union agree that he shall be so treated.

■ We agree with Hatco that these owner-operators must in fact be employees of Hatco consistent with the NLRA before Hatco may be required, by the terms of the MLA, to make contributions to the Trust Funds based upon the hours the owner-operators worked. The issue then is whether *these* owner-operators are employees or independent contractors.   ·

■ We will defer to the judgment of the trial court if there are at least two fairly conflicting views. *Associated Gen. Contractors v. NLRB*, 564 F.2d 271, 279 (9th Cir.1977). Where, as here, the trial court was not requested to and did not make findings of fact or conclusions of law, the reviewing court must view the evidence and reasonable inferences therefrom in the light most favorable to the party in whose

favor the judgment was rendered, and if there is any evidence to support the judgment of the trial court, it must be affirmed. *Appeal in Juvenile Action J–75482*, 111 Ariz. 588, 536 P.2d 197 (1975); *Jerger v. Rubin*, 106 Ariz. 114, 471 P.2d 726 (1970). The reviewing court also must assume from any judgment the findings necessary to sustain it, if such additional findings do not conflict with express findings and are reasonably supported by the evidence. *Wippman v. Rowe*, 24 Ariz.App. 522, 540 P.2d 141 (1975). But, the *conclusion* that the owner-operators are employees is a finding of law. *Industrial Commission v. Meddock*, 65 Ariz. 324, 327, 180 P.2d 580, 583 (1947); *Dibble v. Garcia*, 98 N.M. 21, 644 P.2d 535 (App.1982). Therefore, a reviewing court must make an independent determination of the legal issue. *Cantlay & Tanzola, Inc. v. Senner*, 92 Ariz. 63, 373 P.2d 370 (1962); *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 412 P.2d 47 (1966); *Dunlop v. Haybuster Mfg. Co.*, 524 F.2d 222 (8th Cir.1975); *Grassetti v. Weinberger*, 408 F.Supp. 142 (N.D.Cal.1976). On the record before us we conclude that there is reasonable evidence which would sustain the mixed factual finding and conclusion of law that the owner-operators are employees of Hatco. Our review also convinces us that the legal conclusion was proper.

■ Hatco relies primarily upon *Associated Gen. Contractors v. NLRB*, 564 F.2d 271 (9th Cir.1977). There the owner-operators opposed the employers and the unions, and sought to overturn the NLRB's ruling that the owner-operators were employees. The Court of Appeals applying substantive federal law found that the owner-operators were independent contractors in fact. Hatco attempts to apply the holding of *Associated Gen. Contractors* too broadly by simply stating that the Court of Appeals held that owner-operators were independent contractors and not employees. However, this tack ignores the Ninth Circuit's own admonition that:

Inasmuch as the determination of this issue [employee versus independent con-

tractor] will depend on the particular facts of the case, we shall first describe the factual setting before us.

564 F.2d at 279. The employee versus independent contractor issue is dependent upon the "total factual context" and all the incidents of the relationship must be assessed and weighed with no one factor being decisive. *Id.* at 282; *see Home Ins. Co. v. Industrial Commission,* 123 Ariz. 348, 599 P.2d 801 (1979); *Restatement (Second) of Agency* § 220 (1957). Cf. A.R.S. § 23-613.01; *Dial-A-Messenger, Inc. v. Arizona Dep't of Econ. Sec.,* 133 Ariz. 47, 648 P.2d 1053 (1982); *Moore v. Arizona Dep't of Econ. Sec.,* 132 Ariz. 360, 645 P.2d 1274 (1982).

▆ The Ninth Circuit in *Associated Gen. Contractors v. NLRB* made it clear that:

In distinguishing between [an independent contractor and an employee] ... the courts must apply general agency principles, ... such as those found in *Restatement (Second) of Agency* § 220(2) (1957).... Of the considerations employed in reaching a decision under general agency law, the determination of who has the right to control and direct the work is foremost.

564 F.2d at 279.

Among the factors the Ninth Circuit found most important to its conclusion that the owner-operators in that case were independent contractors are the following: The relationship between an owner-operator and the contractor was generally short lived; an owner-operator might work for as many as 100 contractors a year, and two different contractors during one day; while the California Public Utilities Commission (PUC) established minimum tariffs, the owner-operators were free to negotiate for higher rates; the owner-operators kept track of their own individual time and presented bills to the carrier for their services; the owner-operators were required by the PUC to obtain a permit issued by the PUC, be bonded and carry sufficient liability insurance. Finally, an owner-operator had to bear the entire cost of his enterprise, including equipment, tools, service, insurance, office supplies and truck maintenance.

The facts of the present case show a clear distinction between the owner-operators in *Associated Gen. Contractors v. NLRB* and the owner-operators hired by Hatco. Hatco's owner-operators generally work for Hatco on a long-term continuing basis. They may work *only* for Hatco during the time that they are leasing their trucks to Hatco and are precluded from working for any other contractor while under contract to Hatco. Hatco's owner-operators are not free to negotiate their individual rates of pay but must accept a standard 80 percent of the fee Hatco receives from the construction contractor. The owner-operators do not present bills to Hatco but complete time cards kept at the Hatco yard which are collected daily. Hatco prepares a monthly statement and remits to the owner-operators the proper amount with a statement of account. In addition, none of the owner-operators have licenses themselves. Each one of them operates solely under Hatco's authority and license, as required by the Arizona Corporation Commission's rules and regulations. A.C.R.R. 14-5-317. The owner-operators are allowed to keep their trucks in Hatco's yard without extra charge. Finally, there was testimony at trial that Hatco promulgated a "Driver's Manual." The testimony revealed that whether or not each and every rule and regulation was applicable to both Hatco's own employees and the owner-operators, there were certain regulations—for example, regarding drinking and driving, regarding how the drivers were to conduct themselves—which if violated would constitute grounds for dismissal of the driver, whether employee or owner-operator.

▆ On the other hand, the record reflects that Hatco withheld neither federal and state income taxes nor social security and that the owner-operators were individually responsible for paying any estimated taxes that came due. Appellant's reply brief states that Hatco did not pay "compensation insurance," but no supporting ci-

tation to the record is made and we therefore do not consider appellant's assertion. Rule 13(a)(6), Arizona Rules of Civil Appellate Procedure; *Estate of Weil,* 21 Ariz. App. 278, 283, 518 P.2d 995, 1000 (1974). *See, L.C. James Motor Co. v. Wetmore,* 36 Ariz. 382, 388–89, 286 P. 180, 182 (1930).

▮ We believe the contrasts between the present case and *Associated Gen. Contractors v. NLRB* are sufficient to uphold the judgment of the trial court on the employee/independent contractor issue.

### III

The last issue pertains to certain hourly employees and presents the question of whether those employees were performing work covered by the agreement. The largest category of these persons are ones engaging in yard and shop clean-up. Although we think these workers could arguably be covered under several provisions of the MLA, we find paragraph 107 most clearly applicable:

> All work performed in the Contractor's warehouses, shops or yards which have been particularly provided or set up to handle work in connection with a job or project covered by the terms of this Agreement shall be subject to the terms of this Agreement. All work performed in other warehouses, shops or yards of the Contractors shall be likewise subject to the terms and conditions of this Agreement.*

In *Maddux, supra,* this court considered the issue of whether certain employees performed covered work. The employees and trucks delivered ready mix cement to construction sites and "the trucks and other equipment were maintained and repaired by Maddux employees so appellant could manufacture and deliver its products and materials to the construction sites." 125 Ariz. at 479, 610 P.2d at 481. We held that the activities fell within the MLA definition of construction work because the operations were incidental to construction and involved the operation, maintenance and repair of equipment and vehicles used in connection with its operations.

▮ Here it is clear that Hatco's drivers are involved in construction work and that the yard and shop clean-up work are incidental to the hauling. The president of Hatco testified:

> The shop is a continual problem to keep clean. The yard, we have bottom dumps running in it, and the drivers test their gates in the morning, and we have quite a bit of material fall out of those in the yard. We have quite a bit of work cleaning the trucks out, washing them, keeping them presentable.

Obviously clean-up at Hatco is part and parcel of the business. We cannot say that the trial court's finding that this work was covered is clearly erroneous. *See New Mexico Dist. Council v. Mayhew Co.,* 664 F.2d 215 (10th Cir.1981). Appellant also asserts that, even if the clean-up work is covered, some of the employees doing that work are exempted by paragraph 107.3 of the MLA; which provides:

> The work of those employees of the Contractor employed in his home warehouses, shops or yards who, by reason of age, youth, ability, or physical or mental infirmity, are incapable of earning wages as provided for in this Agreement. The right of the Contractor to employ these workmen shall not be unreasonably denied. The rate of pay for such persons shall be determined on an individual basis.

While this presents a closer question because there was testimony that the four workers arguably covered by 107.3 were either youthful, aged, or physically infirm, we agree with appellees that there was no evidence that the four were incapable of earning wages provided by the agreement. Also, the paragraph appears to require the assent of, or at least notice to, the union before the hiring of such persons. There is no indication of such assent or notice in this record.

---

* This quote is taken from the 1979–82 MLA. Paragraph 107 in the 1976–79 MLA contains slightly different wording, but is substantively the same.

■ Lastly, we come to the issue of whether E. Reinhard performed covered work. Mr. Reinhard clearly engaged in covered work by overhauling diesel engines. Paragraph 101 states that the agreement applies "to cover all employees of the Contractors employed to perform or performing work as defined in the Agreement." Mechanic's work is covered under paragraph A–202. Therefore we cannot say that the trial court was clearly erroneous in finding Mr. Reinhard to be one whose work was covered, requiring Hatco contributions to be made on his behalf to the Funds.

The judgment is affirmed.

MEYERSON, P.J., and BROOKS, J., concur.