688 P.2d 1167

**Orville P. and Elizabeth BROOKS, husband and wife, Plaintiffs-Appellants,**

v.

**N.L. TERTELING, and all other persons unknown claiming any right, title, interest in the real property described in plaintiffs' complaint, adverse to plaintiffs' ownership or any cloud upon plaintiffs' title thereto, Defendant-Respondent.**

**N.L. TERTELING and Angela B. Terteling, husband and wife, and Terteling Land Company, a Washington corporation, Counterclaimants,**

v.

**Orville P. and Elizabeth BROOKS, husband and wife, Counterdefendants.**

**N.L. TERTELING and Angela B. Terteling, husband and wife, and Terteling Land Company, a Washington corporation, Cross-Claimants,**

v.

**JOHN DOES I THROUGH X, Cross-Defendants.**

No. 14835.

Supreme Court of Idaho.

Sept. 19, 1984.

Allen R. Derr and Patricia Bridge Urquhart (argued), Boise, for plaintiffs-appellants.

Phillip Stephen Oberrecht, Boise, for defendant-respondent.

BISTLINE, Justice.

The present appeal is concerned with an option to purchase land executed between the owners of the land, Orville P. Brooks and his wife Elizabeth Brooks, and the holder of the option to purchase, N.L. Terteling.

██ The land in question is 2.82 acres of lakefront property located on the Payette Lake near McCall, Idaho. The trial court found on conflicting evidence that the option agreement was part of a single transaction involving the sale by the Brooks of an additional 24.18 acres which, together with the 2.82 acres under options, had originally comprised a single 27-acre parcel. The trial court further found that the consideration for the concurrent land purchase agreement also comprised the consideration for the option agreement. After reviewing the record, we hold that the trial court's finding was supported by substantial competent evidence and accordingly affirm it.

██ The trial court also found that the option agreement was not unconscionable in its terms. The option provided that Mr. Terteling would have "an option and first right of refusal to purchase said real property at such time and in the event Brooks desire to sell or dispose of all or any interest in said real property." The option further provided for a fixed purchase price of $8,382.50—a price which both parties have stipulated to have been a fair price for the land in question in 1956 when the agreement was entered into. Because the agreement reflects a voluntary transaction, fair at its inception, consummated between competent persons, and lacks both the unfair surprise and one-sidedness typically associated with unconscionable agreements, we likewise affirm the trial court on this

point. *See, e.g.,* I.C. § 28–2–302. *See also Stearns v. Williams,* 72 Idaho 276, 240 P.2d 833 (1952).

■ It appears to us, however, that the underlying cause of much of the present litigation is certain language, quoted in part, *supra,* found in the option agreement itself. The relevant part of Section 2 of the "Option to Purchase" states the following:

"At any time hereafter, *should Brooks desire or propose to sell or dispose of, or create any outstanding interest of any kind or nature in all or any part of said real property,* and before so doing, they shall give notice, in writing, to Terteling of that intention on their part; and at any time within a period of thirty days after delivery thereof, Terteling may exercise the option herein granted to purchase said real property, which exercise of said option shall be accomplished and effected by Terteling through delivery of notice, in writing, to Brooks within said thirty day period of time, stating that its option as contained in this instrument is thereby being exercised." (Emphasis added.)

The primary bone of contention concerning the above-quoted language involves the underscored language and the question of what acts by the Brooks comprise the creation of an outstanding interest such as would trigger Mr. Terteling's option to purchase. It is Mr. Terteling's contention that such language includes within its wide embrace not only prospective sales of the property but devises to family members and the death of Mr. and Mrs. Brooks as well. Thus, under the interpretation urged by Mr. Terteling, the option agreement signed by the parties does not merely provide Mr. Terteling with a right of first refusal should Mr. and Mrs. Brooks decide to sell their property, but rather comprises an absolute guarantee that the property would automatically become Terteling's upon the demise of Elizabeth and Orville Brooks.

However, it is our view that the Brooks neither desired nor intended such a sweeping surrender of their property rights and

that the contract itself does not support such an interpretation. We note in this regard that the agreement is entitled and referred to throughout as an "option to purchase" rather than, for instance, a land sale agreement with a retained life estate subject to certain limitations, as it would in fact be under the interpretation proffered by Mr. Terteling. "An option to purchase or to sell is not a contract to purchase or sell." *Catmull v. Johnson,* 541 P.2d 793, 796 (Utah 1975); Black's Law Dictionary 986 (rev. 5th Ed.1979). In claiming this to be a *de facto* sale of the property we believe respondents are in error. In addition, especially where there is an ambiguity in the language employed in the operative portion of the contract, we may look to the recitals to determine and construe the intent of the parties as expressed in the entire document. *Maddux & Sons, Inc. v. Trustees of Arizona Laborers, Teamsters and Cement Masons, Local 395 Health and Welfare Trust Fund,* 125 Ariz. 475, 610 P.2d 477 (1980); *Bowen v. Sil-Flo Corp.,* 9 Ariz.App. 268, 451 P.2d 626 (1969); *Brackett v. Schafer,* 41 Wash.2d 828, 252 P.2d 294 (1953). In the present case, the recital to the contract itself states the following:

"Whereas, it is the desire and intent of the parties hereto that Terteling shall have an option and first right of refusal to purchase said real property at such time and in the event Brooks desire to sell or dispose of all or any interest in said real property; ...."

The above-quoted language, we believe, clearly evidences an understanding by the parties that their agreement was primarily for a right of first refusal to purchase. "In construing a contract the court will give effect to the language employed according to its usual, plain and ordinary meaning." *Scharbach v. Continental Casualty Co.,* 83 Idaho 589, 593, 366 P.2d 826, 828 (1961); *Messinger v. Cox,* 33 Idaho 363, 194 P. 473 (1920). In addition, we note that to the extent that any ambiguity arises from the use of the words "interest" and/or "create any outstanding interest of

any kind or nature," such ambiguity must be construed most strongly against the party who prepared and provided that language—in this case, the respondent Mr. Terteling. *Werry v. Phillips Petroleum Co.*, 97 Idaho 130, 540 P.2d 792 (1975); *Dale's Service Co., Inc. v. Jones*, 96 Idaho 662, 534 P.2d 1102 (1975). It is the view of this Court that the language employed between these parties and in this case meant just what it said: that should the Brooks, their heirs or assigns, decide to sell or otherwise encumber the subject property, that property shall first be subject to a right of first refusal at the agreed price by Mr. Terteling, his heirs or assigns. However, under the circumstances of this case, it is our view that neither the death nor devise of the property by Mr. and Mrs. Brooks trigger the option to purchase held by Mr. Terteling. Because we believe the trial court adopted the erroneous interpretation urged by Mr. Terteling, we accordingly modify that part of the judgment below.

Affirmed as modified. No costs or attorney's fees.

HUNTLEY, J., concurs.

DONALDSON, C.J., concurs in the result.

BAKES, Justice, dissenting:

The case decided in the majority opinion today has very little resemblance to the case tried before Judge Schroeder, or the case which was presented on appeal. The trial court granted judgment in favor of the defendant, and the Court today modifies that judgment to rule in favor of the plaintiff, which ordinarily would be thought of as a reversal of the trial court. However, it is understandable that the majority has captioned its order as "affirmed as modified," rather than "reversed," since the majority has decided this case on a ground never raised before the trial court and never raised on appeal.

The simplest expression of what this case is about can be taken from the Statement of the Case on pages 1–3 of appellants' opening brief which sets out what issues were tried below and what the issue on appeal is. That statement reads as follows:

"STATEMENT OF THE CASE

"Plaintiffs-Appellants initially filed this action in the Fourth Judicial District, Valley County, on August 1st, 1980. Their complaint sought to invalidate, cancel and set aside a contract encaptioned Option to Purchase to which they and Defendant-Respondents N.L. and Angela Terteling had been signatores effective the 24th day of October, 1956. The Option to Purchase ostensibly granted to the Tertelings a right of first refusal should the Appellants ever desire to sell certain undeveloped property located at the shoreline of East Payette Lake. The Option contained certain language setting forth the circumstances under which the Tertelings' opportunity to purchase the property would be triggered. Defendant-Respondents, in their answer to the complaint, declared that the option was valid and enforceable, and counterclaimed that the initiation of suit should be considered to have granted them power to exercise their right to purchase.

"The parties cross-moved for summary judgment in May of 1981, and were given ample opportunity to brief and argue the issues. The Tertelings urged the validation of the contract under the standards of continuing alienability, adequacy of consideration, absence of mistake on the part of the Brookses, and absence of duress in the inducement. The Brookses declared that they had been mistaken regarding the effect of the contract's terms, entered under duress, had never received true compensation for the option, and believed the terms restrained alienability in contravention of well-settled law and were unconscionable.

"The Honorable Gerald F. Schroeder entered a judgment upon the merits in an order of September 8th, 1981, the language of which he found the need to correct in certain respects in October of 1982. He held that the Option did not represent an improper restraint upon al-

ienation, but left for trial the determination of its enforceability on other grounds. He found that initiation of the action did not empower Defendant-Respondents to exercise their power to purchase.

"Trial to the court upon the merits was held July 13th, 1982, and a final judgment entered November 9th, 1982. Judge Schroeder found that the option contract was part and parcel of another transaction, in which adequacy of consideration was not questioned. He found that the memories of the parties had dimmed through the years, but that Mr. Terteling's depiction of the circumstances surrounding the formation of the contract was the more acceptable account. He believed the Brookses should have understood the import of the document. He further held the Option to Purchase valid and enforceable despite the substantial increase in the value of the property in the years intervening since formation.

"The Court's express ruling, succinctly stating the issues on appeal, includes the following:

2. The Option to Purchase made and executed the 24th day of October, 1956 by and between Orville P. Brooks and Elizabeth Brooks and N.L. Terteling, recorded with the Valley County Recorder on the 26th day of October, 1956 as Instrument No. 50415 is not entitled to cancellation, is a valid and enforceable agreement, supported by adequate consideration, was not unconscionable, was not obtained by duress, nor executed by mistake, is not an illegal restraint on the alienation of real property and is binding upon the plaintiffs' heirs ....

"From this decision, Appellants seek relief."

The foregoing is the appellants' expression of what this appeal is about. Unfortunately, the Court today decides a different case.

The opinion of the Court acknowledges that on each of the issues raised before the trial court, the trial court's findings are supported by substantial, competent evidence, and the Court affirms the trial court on those points. One would think that would be the end of the case.

However, the majority then speculates as to what would happen in the event that upon death Mr. and Mrs. Brooks might devise the property to their family members.

"[U]nder the interpretation urged by Mr. Terteling, the option agreement signed by the parties does not merely provide Mr. Terteling with a right of first refusal should Mr. and Mrs. Brooks decide to sell their property, but rather comprises an absolute guarantee that the property would automatically become Terteling's upon the demise of Elizabeth and Orville Brooks." *Ante* at 1169.

Although the majority declares that this is Mr. Terteling's interpretation of the contract language, neither party has asserted that interpretation. Furthermore, assuming that that was Mr. Terteling's interpretation, the appellants, in their Statement of the Case set out above, acknowledge that the trial court found, on conflicting evidence, "that Mr. Terteling's depiction of the circumstances surrounding the formation of the contract was the more acceptable account." The Court finally concludes, "[I]t is our view that the Brookses neither desired nor intended such a sweeping surrender of their property rights and that the contract itself does not support such an interpretation ...."

Even if intent of the parties were a determinative question, it is not the intent of one of the parties, but both parties, which should be determinative. Then, that question should be determined as a matter of fact by the trial court, rather than by this Court on appeal. Likewise the majority states, "[W]e note that to the extent that any ambiguity arises from the use of the words interest and or 'create any outstanding interest of any kind or nature,' such ambiguity must be construed most strongly against the party who prepared and provided that language—in this case, the re-

spondent Mr. Terteling." *Ante* at 1169–1170. Again, if ambiguity of the option to purchase is an issue, that is an issue of fact to be resolved by the trial court, not this Court on appeal.

Finally, after stating that "the language employed between these parties and in this case meant just what it said," the Court rejects the literal interpretation of the option language assumed by both parties. Answering a question which was not an issue below or on appeal, the Court determines that devise of the property would not trigger the option to purchase held by Mr. Terteling. The Court has thus resolved an issue which neither party has raised or briefed.

I would affirm the trial court on the issues which were tried below and which were raised on appeal, leaving for another day the issue upon which the majority decides this case.

SHEPARD, J., concurs.