**116**

781 P.2d 594

ARIZONA STATE CARPENTERS HEALTH AND WELFARE TRUST FUND, a Trust; and Mark Minter, James R. McDonald, Gary Lisk, Ed Friedman, John F. Greene, and Robert Boggs, its Trustees; Arizona State Carpenters Pension Trust Fund, a Trust; and Mark Minter, James R. McDonald, Gary Lisk, Don Fornear, John F. Greene and Art Peery, its Trustees; Arizona State Carpenters Vacation–Savings Trust Fund, a trust; and Mark Minter, James R. McDonald, Gary Lisk, Bill Martin, John F. Greene, and Benjamin Bidwell, its Trustees; and Arizona State Carpenters Joint Apprenticeship Program, a Trust, Plaintiffs/Appellees,

v.

Robert K. SANDERS and Jamie V. Sanders, husband and wife, Defendants/Appellants.

No. CV–88–0516–PR.

Supreme Court of Arizona, En Banc.

Sept. 26, 1989.

Lee, Stegall & Katz by Todd A. Schultz and Kurt A. Goering, Phoenix, for plaintiffs/appellees.

Owens, Rybarsyk & Nussbaum by Paul M. Rybarsyk, Phoenix, for defendants/appellants.

GORDON, Chief Justice.

Arizona State Carpenters Health and Welfare Trust Fund and others (plaintiffs) seek review of a court of appeals' memorandum decision holding that a successor company was not bound by its predecessor's collective bargaining agreements. *Arizona State Carpenters Health and Welfare Trust Fund v. Sanders,* 2 CA–CV 88–0200 (Ariz.Ct.App., filed Oct. 18, 1988) (memorandum decision). We have jurisdiction and granted review. Ariz. Const. art. 6, § 5(3); Ariz. R. Civ.App.P. 23, 17B A.R.S. We now vacate the court of appeals memorandum decision and affirm the trial court.

## I. FACTS

Amrock, Inc. (Amrock) was an Arizona corporation incorporated in October, 1982. Robert K. Sanders (Sanders) held all of the Amrock stock and acted as President, Secretary, Director, and Chief Executive Officer. Amrock's business activities included drywalling, framing, stuccoing, and painting. On February 10, 1983, Amrock entered into a collective bargaining agreement that required Amrock, as employer, to pay plaintiffs a specified hourly wage for certain types of work performed by Amrock's employees. The agreement required Amrock to make contributions for all employees doing certain types of work, whether the employees were union members or not.

The collective bargaining agreement signed by Sanders incorporated by reference the Agreement and Declaration of Trust of the Arizona State Carpenters Pension Trust Fund, dated November 15, 1965, as well as any amendments. The trial exhibits include a document entitled "Restatement of the Rules and Regulations of the Pension Plan for the Arizona State Carpenters' Pension Trust Fund" (the Pension Plan Rules), dated January 27, 1977, referring to a trust agreement dated November 15, 1965. Article IX, Section 4, the successor liability provision of this document, provides:

> If an employer is sold, merged or otherwise undergoes a change of company identity, the successor company shall participate as to its employees ... just as if it were the original company, provided it remains an employer.

The collective bargaining agreement was effective from September 2, 1982, through January 31, 1986, with automatic yearly renewals thereafter. Either party could terminate the agreement by notifying the other party in writing not more than 120 nor less than 60 days prior to January 31, 1986. The agreement required Amrock to file reports of hours worked by employees doing certain types of work.

Amrock failed to make timely contributions. In a cause separate from this action, plaintiffs obtained a partial judgment against Amrock in November 1983. Amrock went out of business in December 1983 because of financial difficulties. One

month later, in January 1984, Sanders started a sole proprietorship. Also in 1984, Sanders marked an Amrock report "final," arguably intending to terminate the collective bargaining agreement signed on behalf of Amrock.

The new business does the same type of work as Amrock. Amrock's "customers" were contractors. The new business deals with the same type of customers, but their identities are generally different from Amrock's customers. Half of Amrock's former customers, however, are now out of business. Sanders managed and supervised Amrock, and he now manages and supervises the new business. Amrock had leased office space from Sanders' wife, Jamie V. Sanders. The new business is at the same address, but in a different suite.

Amrock hired union employees, but the new business does not. The new business does not own any of Amrock's assets. Amrock, however, had no assets when it ceased doing business and its receivables were assigned to creditors.

On May 7, 1985, plaintiffs sued Sanders and his wife alleging Sanders' new business was a "successor" to Amrock that was required to make contributions under the collective bargaining agreement. Sanders denied that his new business was liable as a successor.

After a trial on the issue of liability, the trial judge entered judgment against Sanders, finding that the new business was bound to the terms of the agreement because it was merely a continuance of the old business, and the change in corporate form was not the result of a bona fide discontinuance.[1] The trial judge ruled that federal labor law controlled the case and that state alter ego law did not apply. The trial judge also noted that marking "final" on the report was not sufficient notice to

terminate the collective bargaining agreement. The parties stipulated to $80,000.00 in damages. The trial judge denied Sanders motion for new trial or amendment of judgment.

In a memorandum decision, the court of appeals reversed. It reasoned that even if Sanders is a successor employer, he is not bound by the substantive provisions of the collective bargaining agreement because the two entities had no employees in common, citing *NLRB v. Burns Security Services*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972); *Hawaii Carpenters Trust Funds v. Waiola Carpenter Shop, Inc.*, 823 F.2d 289 (9th Cir.1987); *Carter v. CMTA–Molders & Allied Health & Welfare Trust*, 736 F.2d 1310 (9th Cir.1984).

## II. ANALYSIS

Although state courts have concurrent jurisdiction over suits alleging an employer's violation of a collective bargaining agreement, federal law applies. *See* 29 U.S.C. § 185 (1947); *Arizona Laborers, Teamsters and Cement Masons v. Hatco, Inc.*, 142 Ariz. 364, 367, 690 P.2d 83, 86 (Ct.App.1984). Under federal labor law, a successor employer may be bound to recognize and bargain with a union with whom its predecessor had a contract, but generally, the successor is not bound by the substantive provisions of a collective bargaining agreement negotiated by its predecessor. *Audit Services, Inc. v. Rolfson*, 641 F.2d 757, 763 (9th Cir.1981) (citing *NLRB v. Burns Security Services*, 406 U.S. 272, 284, 92 S.Ct. 1571, 1580, 32 L.Ed.2d 61, 71 (1972)).

Under some circumstances, however, a successor employer may be bound by the substantive terms of its predecessor's contract. For example, a successor may be liable if it assents to or assumes

---

1. In a minute entry, the trial judge quoted Article IX, Section 4 of the Restatement of the Rules and Regulations of the Pension Plan for the Arizona State Carpenters' Pension Trust Fund (the "Pension Plan Rules"), which imposes liability on successor employers. We note that although the minute entry quotes the Pension Plan Rules, it mistakenly cites to a different document, the Health and Welfare Trust Fund

Agreement, which does not contain a successor liability provision. Presumably, the trial judge relied on the successor liability provision of the Pension Plan Rules in holding that Sanders, as Amrock's successor, was bound to the provisions of the collective bargaining agreement. Otherwise, Sanders would not have been liable as a successor unless he was also an alter ego. (see analysis below).

the agreement, *Rolfson*, 641 F.2d at 763–64, or if it refuses to bargain with the union, *Hawaii Carpenters Trust Funds v. Waiola Carpenter Shop, Inc.*, 823 F.2d 289, 294–95 (9th Cir.1987), or if it is a mere disguised continuance or alter ego of the predecessor. *J.M. Tanaka Construction, Inc. v. NLRB*, 675 F.2d 1029, 1033–35 (9th Cir.1982).

We do not find sufficient evidence to indicate that Sanders assented to or assumed the collective bargaining agreement. Thus, the exception set forth in *Rolfson* does not apply to this case. Neither do we find evidence that Sanders hired former employees or that they attempted to bargain with Sanders through the union. Thus, the exception in *Hawaii Carpenters* does not apply. *See Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 42–54, 107 S.Ct. 2225, 2235–2241, 96 L.Ed.2d 22, 36–44 (1987) (new company must bargain with union at that point in time when company hired "substantial and representative complement" of employees, a majority of such employees were employed by the old company, and employees made bargaining demand through union).

The issue before us is whether Sanders is a successor, and if so, whether he is a mere successor or also an alter ego. If he is a mere successor, the law does not bind him to the terms of the collective bargaining agreement. If, however, Sanders is a disguised continuance or alter ego of Amrock, he is bound by Amrock's collective bargaining agreement. *See NLRB v. Tricor Products, Inc.*, 636 F.2d 266, 269–70 (10th Cir. 1980). Because such a determination is a question of fact, our review is limited to whether there is sufficient evidence to support the trial court's finding that the new business was merely a continuance of the old.

█ The test to determine whether a new company is a mere successor or also an alter ego to the old is primarily factual and based on the totality of the circumstances. The focus is on whether there is "substantial continuity" between the enterprises. *Fall River Dyeing*, 482 U.S. at 43, 107 S.Ct. at 2236, 96 L.Ed.2d at 37. In

finding mere successorship, courts consider such factors as: (1) whether the business of both employers is essentially the same; (2) whether the employees of the new company are doing the same jobs in the same working conditions under the same supervisors; and (3) whether the new entity has the same production process, produces the same products, and basically has the same body of customers. *Id.* Another factor is whether the new company has the same location and uses the same equipment. *Hawaii Carpenters*, 823 F.2d at 293–94.

█ These same factors weigh towards application of the alter ego doctrine but, in addition, courts consider: (1) whether the structural change was motivated by anti-union sentiment or legitimate business reasons, *NLRB v. Tricor Products, Inc.*, 636 F.2d 266, 269–70 (10th Cir.1980); (2) whether obtaining the benefit of eliminating labor objections was an intended or reasonably foreseeable effect of the change in ownership, *Alkire v. NLRB*, 716 F.2d 1014, 1020 (4th Cir.1983); and (3) whether there was a true change in ownership and management or "merely a disguised continuance of the old employer." *Tricor*, 636 F.2d at 270 n. 8, (quoting *Southport Petroleum Co. v. NLRB*, 315 U.S. 100, 106, 62 S.Ct. 452, 456, 86 L.Ed. 718, 724 (1942)).

In *Goodman Piping Products, Inc. v. NLRB*, 741 F.2d 10, 11–12 (2nd Cir.1984), James Goodman obtained ownership of all of the stock of E.G. Sprinkler Corp., a company that installed, maintained, and repaired fire protection systems. E.G. Sprinkler Corp. ceased operations in 1981 because of financial difficulties. Also in 1981, Goodman Piping Products, Inc., a pipefitting company was incorporated. Goodman's wife held all of the stock. Goodman Piping Products, Inc., through James Goodman, began performing the identical business that E.G. Sprinkler Corp. performed. The court found that the two companies were alter egos because they had substantially identical management, business purpose, supervision, customers and ownership. Thus, the new company was bound by the terms of the old compa-

ny's collective bargaining agreement. *Id.* at 11–12.

In *J.M. Tanaka Construction,* a family-owned construction company suffered financial difficulties. In August, one family member formed a new corporation. The old company shut down in September. The new company hired many of the former employees and managers, purchased the assets, and continued a portion of the old company's business. 675 F.2d at 1032–35. The court found the companies were alter egos because of the common control of labor relations, interrelation of business activities and equipment, and common employees.

Alter ego does not exist in every situation where a company goes out of business and a new company is formed. For example, in *Carpenters Southern California Administrative Corporation v. Russell,* 726 F.2d 1410 (9th Cir.1984), Russell, operated a contracting company as a sole proprietor. He entered into an agreement with the union. He terminated the business in 1971 and earned his living as a carpenter until 1977. In 1977, he opened a new contracting company. The union argued that the new company was bound by the terms of the agreement under the alter ego doctrine. The court rejected this argument because Russell terminated the old business in good faith and worked as a carpenter for six years before opening a new business. *Id.* at 1414.

■ The facts of this case are similar to the facts in *Goodman* and *J.M. Tanaka.* In both of those cases, a family-owned company changed the ownership structure and continued substantially identical business operations. The old companies went out of business and the new companies began business within the same year. Sanders and Amrock changed the ownership structure and continued substantially identical business operations within two months. This case is distinguishable from *Russell,* where the defendant terminated his contracting business and then worked as a carpenter for six years before opening a new business.

Applying the factors set forth above, we agree with the trial court's determination that Sander's new business is a continuance of Amrock. The business activities of the two companies are identical: drywalling, framing, stuccoing, and painting. Although many of Amrock's former customers have gone out of business, the new entity deals with the same type of customers—contractors. Both companies were located in Sanders' wife's building. The new company does not use any of Amrock's assets, but Amrock had no assets when it went out of business. Sanders owned and managed both companies. One picked up where the other left off.

Amrock went out of business because its liabilities exceeded its receivables. One liability was to plaintiffs for unpaid contributions. It is possible to construe Amrock's going out of business as an attempt to avoid liability for these unpaid contributions and to avoid continuing obligations under the collective bargaining agreement, particularly in light of the time frames in which the actions occurred.

Sanders' new company is both a successor of and the alter ego of Amrock. Thus, the trial court correctly concluded that Sanders is liable for the unpaid contributions due under the collective bargaining agreement.

## III. CONCLUSION

The judgment of the trial court is reinstated, and the court of appeals opinion is vacated.

FELDMAN, V.C.J., and CAMERON, MOELLER and CORCORAN, JJ., concur.