72 P.3d 877

**Peggy LOVEY, Plaintiff–Respondent,**

v.

**REGENCE BLUESHIELD OF IDAHO, an Idaho corporation, Defendant–Appellant.**

**No. 28949.**

Supreme Court of Idaho, Boise, April 2003 Term.

June 18, 2003.

Hall, Farley, Oberrecht & Blanton, Boise, for appellant. Richard E. Hall argued.

Gjording & Fouser, PLLC, Boise, for respondent. Bobbi K. Dominick argued.

EISMANN, Justice.

This is an interlocutory appeal from an order holding that the arbitration clause in an insurance policy is unenforceable. We reverse.

## I. FACTS AND PROCEDURAL HISTORY

The plaintiff-respondent Peggy Lovey purchased a short-term, non-renewable health insurance policy from defendant-appellant Regence BlueShield of Idaho (BlueShield) providing coverage from August 4, 2000, until December 4, 2000. In November 2000, Ms. Lovey underwent testing to determine whether pain she was experiencing in her legs was due to a vascular condition. BlueShield paid benefits related to those tests.

On December 11, 2000, after her first BlueShield policy had expired, Ms. Lovey contacted BlueShield agent Jack Dies of Sun Valley Insurance to obtain health coverage. With his assistance, she applied for another short-term health insurance policy from BlueShield and paid the six-month premium. BlueShield accepted Ms. Lovey's application and sent her a copy of the policy. Ms. Lovey contends that Mr. Dies informed her that her coverage would commence on December 12, 2000. BlueShield contends that her coverage commenced on December 14, 2000.

On December 13, 2000, Ms. Lovey returned to her physician for additional testing. On the basis of those test results, her physician determined that Ms. Lovey needed bypass surgery on her abdominal aorta, which she later underwent. BlueShield refused to pay benefits for the testing and surgery on the ground that coverage under Ms. Lovey's policy did not begin until December 14, 2000.

On March 25, 2002, Ms. Lovey filed this action seeking damages for breach of contract and bad faith. BlueShield responded by filing a motion to dismiss this action, or in

the alternative to stay the proceedings, on the ground that the insurance policy required arbitration of the dispute between Ms. Lovey and BlueShield. Ms. Lovey countered by contending that the arbitration clause in the insurance policy was unconscionable.

After oral arguments on BlueShield's motion, the district court issued a memorandum decision on August 20, 2002, denying the motion on the ground that the arbitration clause was unconscionable. This Court then granted an interlocutory appeal.

## II. ISSUES

A. Is the arbitration clause in the insurance contract enforceable?

B. Does the arbitration clause include within its scope the tort of bad faith?

C. Is either party entitled to an award of attorney's fees on appeal?

## III. ANALYSIS

### A. Is the Arbitration Clause in the Insurance Contract Enforceable?

■ In 1975 the Idaho legislature enacted the Uniform Arbitration Act, IDAHO CODE § 7–901 *et seq.* (1998). "Under the act arbitration and agreements to arbitrate are encouraged and given explicit recognition as effective means to resolve disputed issues. Arbitration generally offers an inexpensive and rapid alternative to prolonged litigation. It also serves to alleviate crowded court dockets." *Loomis, Inc. v. Cudahy,* 104 Idaho 106, 108, 656 P.2d 1359, 1361 (1982) (footnotes omitted). Idaho Code § 7–901 provides: "A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist in law or in equity for the revocation of any contract." In *Loomis* we stated that grounds for revocation are mutual agreement or a condition that vitiates the agreement *ab initio,* such as fraud, mistake, or duress.

Because unconscionability is also a ground for voiding a contract, *Smith v. Idaho State Univ. Fed. Credit Union,* 114 Idaho 680, 760 P.2d 19 (1988), it can also be a basis for revoking an agreement to arbitrate.

■ Pursuant to the Uniform Arbitration Act, a court can, on appropriate grounds, invalidate either a written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit a controversy to arbitration. In this case, there was no written agreement between Ms. Lovey and BlueShield to submit their controversy to arbitration. Rather, there was an arbitration clause in their written insurance contract. Thus, she seeks to invalidate that arbitration clause, not the insurance contract as a whole.

■ States may not invalidate arbitration agreements under state law, whether of legislative or judicial origin, that is applicable only to arbitration provisions. *Doctor's Assoc., Inc. v. Casarotto,* 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).[1] Rather, the validity of either a contract to arbitrate or an arbitration provision in a contract must be determined under contract defenses that are generally applicable to all contracts. *Id.* When reviewing an unconscionability determination made by the trial court, we must accept the factual findings made by the trial court, as long as they are supported by substantial, competent evidence. *Walker v. American Cyanamid Co.,* 130 Idaho 824, 948 P.2d 1123 (1997). Whether, under those facts, a contractual provision is unconscionable is a question of law over which this Court exercises free review. *Id.; Opportunity, L.L.C. v. Ossewarde,* 136 Idaho 602, 38 P.3d 1258 (2002).

■ Courts do not possess the roving power to rewrite contracts in order to make them more equitable. *Smith v. Idaho State Univ. Federal Credit Union,* 114 Idaho 680, 760 P.2d 19 (1988). Equity may intervene to change the terms of a contract if the unconscionable conduct is serious enough to justify

---

1. Although the *Doctor's Associates* case applies only to contracts involving interstate commerce, it would simply create confusion to have one rule of law applicable to such contracts and another rule of law applicable to contracts that do not involve interstate commerce. Therefore, we need not address whether or not the contract in this case involved interstate commerce.

the court's interference. *Id.* "While a court of equity will not relieve a party from a bargain merely because of hardship, yet he [or she] may claim the interposition of the court if an unconscionable advantage has been taken of his [or her] necessity or weakness." 114 Idaho at 684, 760 P.2d at 23 (quoting 28 AM.JUR.2d *Equity* § 24 (1966)). It is not sufficient, however, that the contractual provisions appear unwise or their enforcement may seem harsh. *Walker v. American Cyanamid Co.*, 130 Idaho 824, 948 P.2d 1123 (1997).

■ For a contract or contractual provision to be voided as unconscionable, it must be both procedurally and substantively unconscionable. *Id.* Procedural unconscionability relates to the bargaining process leading to the agreement while substantive unconscionability focuses upon the terms of the agreement itself. *Id.*

■ Procedural unconscionability may arise when the contract "was not the result of free bargaining between the parties." *Northwest Pipeline Corp. v. Forrest Weaver Farm, Inc.*, 103 Idaho 180, 183, 646 P.2d 422, 425 (1982). Indicators of procedural unconscionability generally fall into two areas: lack of voluntariness and lack of knowledge. Lack of voluntariness can be shown by factors such as the use of high-pressure tactics, coercion, oppression or threats short of duress, *Walker v. American Cyanamid Co.,* 130 Idaho 824, 948 P.2d 1123 (1997), or by great imbalance on the parties' bargaining power with the stronger party's terms being nonnegotiable and the weaker party being prevented by market factors, timing, or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all, *East Ford, Inc. v. Taylor,* 826 So.2d 709 (Miss.2002). Lack of knowledge can be shown by lack of understanding regarding the contract terms arising from the use of inconspicuous print, ambiguous wording, or complex legalistic language, *Id.;* the lack of opportunity to study the contract and inquire about its terms, *Id.;* or disparity in the sophistication, knowledge, or experience of the parties, *Walker v. American Cyanamid Co.,* 130 Idaho 824, 948 P.2d 1123 (1997).

■ Substantive unconscionability focuses solely upon the terms of the contract or provision at issue. *Hershey v. Simpson,* 111 Idaho 491, 725 P.2d 196 (Ct.App.1986). The contract or provision is substantively unconscionable if it is a bargain that no person in his or her senses and not under delusion would make on the one hand and that no honest and fair person would accept on the other. *Id.* Factors to consider include whether the contract or provision is one-sided or oppressive. *Walker v. American Cyanamid Co.,* 130 Idaho 824, 948 P.2d 1123 (1997).[2] When determining whether a con-

2. In *Walker v. American Cyanamid Company,* we stated that unfair surprise was one of the elements commonly cited regarding substantive unconscionability, and that unfair surprise existed in that case because of an ambiguity in a provision limiting the liability of the product seller.

> The element of unfair surprise exists because of the ambiguity of the limitation of liability provision. A reasonable purchaser could interpret the provision not to limit the recovery of damages like those in Walker's potato crops.
> Therefore, we conclude that the limitation of liability provision is substantively unconscionable because it constitutes unfair surprise.

130 Idaho at 831, 948 P.2d at 1130. We also stated, however, that the ambiguity upon which the unfair surprise was based is also a factor establishing procedural unconscionability.

> Because the limitation of liability provision is reasonably subject to conflicting interpretation, it is ambiguous. This ambiguity affects the commercial setting, purpose, and effect of the

provision and is an appropriate consideration in determining unconscionability under I.C. § 28–2–302.

> The fact that Cyanamid had superior knowledge concerning ASSERT and made representations concerning its safety *coupled with the fact that the label is ambiguous* and with the lack of Walker's bargaining power to negotiate concerning the limitation of liability lead us to conclude that the limitation of liability provision is procedurally unconscionable.

130 Idaho at 831, 948 P.2d at 1130 (emphasis added).

In *Walker,* we cited *Smith v. Idaho State University Federal Credit Union,* 114 Idaho 680, 760 P.2d 19 (1988), for the proposition that "[s]ubstantive unconscionability asks whether ... the clause is so one-sided as to oppress or unfairly surprise one of the parties." 130 Idaho at 831, 948 P.2d at 1130. In *Smith* we quoted from *Hershey v. Simpson,* 111 Idaho 491, 725 P.2d 196 (Ct.App.1986), for the proposition that substantive unconscionability includes the elements of

tractual provision is unconscionable, the court must consider the purpose and effect of the terms at issue, the needs of both parties and the commercial setting in which the agreement was executed, and the reasonableness of the terms at the time of contracting. *Id.; Hershey v. Simpson,* 111 Idaho 491, 725 P.2d 196 (Ct.App.1986).

■■■■■ The district court found that the arbitration clause in BlueShield policy in this case was procedurally unconscionable for several reasons. The district court noted that this was an adhesion contract—an agreement between two parties of unequal bargaining strength, expressed in the language of a standardized contract, written by the more powerful bargainer to meet its own needs, and offered to the weaker party on a "take-it-or-leave-it basis." As the district court correctly stated, however, an adhesion contract cannot be held procedurally unconscionable solely because there was no bargaining over the terms.[3] Adhesion contracts are a fact of modern life. They are not against public policy. As this Court stated in *Hansen v. State Farm Mutual Automobile Insurance Company,* 112 Idaho 663, 669–70, 735 P.2d 974, 980–81 (1987) (citations and footnotes omitted):

> Hansens also argue that the arbitration provision should be found unenforceable because the contract in question is an adhesion contract and therefore there is no bargaining with insurance companies over the terms. We find this argument to be without merit. It appears to be nothing more than an argument that arbitration clauses in such contracts should be held

void as against public policy. However, the legislature has expressly declared that public policy favors arbitration provisions in written contracts. If the legislature had intended to exempt certain types of contracts from the provisions of the Uniform Arbitration Act, it could have done so.... Additionally, the arbitration clause has again presumably been approved by the Director of the Department of Insurance, to whom the legislature has delegated the authority and responsibility for approving insurance contract terms.

The district court concluded, however, that BlueShield's use of an adhesion contract constituted procedural unconscionability because "[t]he sheer necessity of health insurance distorts free market forces because it limits a consumer's ability to 'shop around' in search of favorable policy contracts with more favorable terms."

BlueShield's use of an adhesion contract may constitute procedural unconscionability if Ms. Lovey was prevented by market factors, timing, or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all. *East Ford, Inc. v. Taylor,* 826 So.2d 709 (Miss.2002). There is nothing in the record, however, to support the district court's statement. There is no showing that all other health insurers in the relevant market area also include similar arbitration clauses in their insurance policies. The district court's conclusion, unsupported by evidence in the record, that Ms. Lovey had limited ability to investigate other health insurance contracts cannot support a finding of procedural unconscionability.

---

one-sidedness, oppression and unfair surprise. In making that statement, *Hershey* cited *Brooks v. Terteling,* 107 Idaho 262, 688 P.2d 1167 (1984). In *Brooks,* we upheld a finding that an agreement was not unconscionable, stating: "Because the agreement reflects a voluntary transaction, fair at its inception, consummated between competent persons, and lacks both the unfair surprise and one-sidedness typically associated with unconscionable agreements, we likewise affirm the trial court on this point." 107 Idaho at 263–64, 688 P.2d at 1168–69. In *Brooks* we did not state that unfair surprise and one-sidedness were both elements of substantive unconscionability. We merely stated that they were both typically associated with unconscionable agreements. Unfair surprise, whether from ambiguity, the use

of inconspicuous print, or complex legalistic language, can cause a party to be uninformed about the terms of the contract and is a factor that can establish procedural unconscionability, not substantive unconscionability.

3. In *Loomis, Inc. v. Cudahy,* 104 Idaho 106, 108, 656 P.2d 1359, 1361 (1982) (footnotes omitted), we stated, "Arbitration generally offers an inexpensive and rapid alternative to prolonged litigation." An insurance policy with an arbitration clause may cost less than a policy without one. A consumer who chooses a less expensive policy that contains an arbitration clause rather than a more expensive policy without one has made a free bargain that is not procedurally unconscionable.

The district court also stated that as often occurs with many adhesion contracts, Ms. Lovey did not have an opportunity to read the insurance contract before she paid the premium. She submitted a premium payment with her insurance application, and, after BlueShield accepted her application, it sent her a copy of the insurance policy. That procedure does not provide a basis for finding procedural unconscionability, however. There is no evidence that Ms. Lovey requested, but was denied, an opportunity to review a copy of the policy before applying for the insurance coverage. The policy for which she applied was identical to the policy she had purchased four months earlier. Therefore, she had approximately four months to review the terms of the policy before submitting her application.

The district court's decision that the arbitration clause was unconscionable was also based upon the fact that BlueShield did not give Ms. Lovey a reasonable explanation of the arbitration provision and what it might mean to her financially. There is no contention, however, that the arbitration provision was ambiguous or that its wording included complex legalistic language, nor is there any evidence that Ms. Lovey asked any questions about what the provision meant. BlueShield's failure to offer unsolicited explanations to the various provisions in its insurance contract is not a factor indicating procedural unconscionability.

Finally, the district court also held that a finding of unconscionability was supported by the fact that the arbitration clause was hidden in the insurance contract. The court stated:

> The clause, tucked away on page seventeen, paragraph twenty-one, deep in the text of the twenty-five-page health insurance contract, is not readily apparent to the consumer. Moreover, the lettering of paragraph twenty-one is indistinguishable from the lettering in surrounding paragraphs, effectively camouflaging the text of the arbitration clause amid a sea of identically formatted provisions of often lesser significance.

The insurance contract was twenty-five pages in length. There can be no require-

ment that an arbitration clause appear on a particular page of the contract. *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). All of the terms of the insurance policy were printed in the same size font. Each provision was separately numbered, titled, and set off by spacing from the preceding and following provisions. The arbitration clause was as follows:

### 21. ARBITRATION

> Any controversy or claim arising out of or relating to this Policy, or the breach thereof, shall be settled by arbitration in accordance with the applicable rules of the American Arbitration Association and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The arbitration shall be held at such place as may be selected by mutual agreement. All fees and expenses of the arbitration shall be borne by the parties equally. However, each party to the arbitration proceeding shall bear the expenses of its own counsel, experts, witnesses, and preparation and presentation of proofs.

There were three other contractual provisions on the same page. The two provisions preceding the arbitration clause were entitled "Notice of Claim" and "Claims Appeal Process," and the following provision was entitled "Time Limit on Certain Defenses." The arbitration clause was not inconspicuous or hidden among other terms in the contract. The district court's conclusion to the contrary is clearly erroneous.

The district court found that the arbitration clause was substantively unconscionable because it provided that the parties must pay their own costs and attorney's fees incurred in the arbitration. The district court concluded that if Ms. Lovey prevailed in the arbitration, she would not receive a meaningful award because the costs she incurred would substantially reduce the $30,000 to $40,000 she was seeking in unpaid medical expenses.

Ms. Lovey's counsel submitted an affidavit in which she estimated that the costs Ms. Lovey may incur in the arbitration could be $2,400 for taking six depositions, a minimum

of $6,000 in fees for two expert witnesses, $400 for preparing exhibits, $100 for photocopying, and $100 for witness travel expenses, for a total of $9,000. If Ms. Lovey litigated her claim in court, and prevailed, she would be entitled to recover approximately $6,900 of that sum as costs as a matter of right.[4] If she litigated her claim in court and lost, she would have to pay her own costs and the costs as a matter of right incurred by BlueShield.

The provision in the BlueShield policy regarding the payment of the costs related to arbitration is not substantively unconscionable. It is neither one-sided nor oppressive. It applies equally to both parties. If the matter were litigated in court, the prevailing party would be entitled to an award of court costs within the limits provided by Rule 54(d)(1) of the Idaho Rules of Civil Procedure. If it is arbitrated, the parties must each pay their own costs. Section 7–910 of the Uniform Arbitration Act grants arbitrators the authority to make an award of costs, unless the parties' agreement provides otherwise. *Wolfe v. Farm Bureau Ins. Co.*, 128 Idaho 398, 913 P.2d 1168 (1996). The statute expressly permits the parties to contract regarding the awarding of costs. The legislature could have provided that the prevailing party in the arbitration is entitled to an award of costs, but it did not do so. A provision that the parties will each pay their own costs is not unconscionable.

The district court also held the arbitration clause void on the ground that arbitration in this case would be prohibitively expensive because Ms. Lovey must bear her costs in the arbitration. According to the district court, her anticipated costs of arbitration, when considered in light of the $30,000 to $40,000 that she hoped to recover, made it unlikely that she would pursue her claim. The district court based its decision upon *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), in which the United States Supreme Court recognized that an agreement to arbitrate may be unenforceable if large arbitration costs precluded the party from effectively vindicating the party's federal statutory rights in the arbitral forum. In *Green Tree*, the Court held that the plaintiff had failed to show the likelihood of incurring such costs, and therefore reversed the decision of the Court of Appeals that had held the arbitration agreement unenforceable due to the anticipated high cost of arbitration.

We have never previously held that the prohibitive cost of arbitration could be a basis for invalidating an agreement to arbitrate, and we decline to do so in this case. If Ms. Lovey prevails in the arbitration, she will be entitled to an award of attorney's fees by the district court, assuming that she filed this action before BlueShield requested arbitration and complied with the provisions of Idaho Code § 41–1839. *Emery v. United Pac. Ins. Co.*, 120 Idaho 244, 815 P.2d 442 (1991). As we stated in *Wolfe v. Farm Bureau Insurance Co.*, 128 Idaho 398, 403, 913 P.2d 1168, 1173 (1996), "[T]he limit on the arbitrator's power to award attorney fees in arbitration does not restrict the court's power in a lawsuit filed to collect amounts due under an insurance policy to award attorney fees incurred during arbitration pursuant to I.C. § 41–1839." When compared with the damages she is seeking, Ms. Lovey's anticipated costs will not preclude her from effectively vindicating her rights. Even if we were to adopt the defense to arbitration recognized in *Green Tree*, it would not make the arbitration clause unenforceable in this case.

**B. Does the Arbitration Clause Include Within Its Scope the Tort of Bad Faith?**

In her complaint, Ms. Lovey alleged causes of action entitled "Breach of Contract" and "Bad Faith." The district court held that both causes of action were subject to the arbitration clause. On appeal, Ms. Lovey

4. She would be entitled to recover as costs as a matter of right charges for reporting and transcribing depositions and for one copy of the depositions ($2,400); reasonable witness fees for experts who testify at a deposition or at trial, not exceeding $2,000 per witness ($4,000); reasonable costs for preparing exhibits, not exceeding $500 ($400); and travel expenses for witnesses who testify at trial, not exceeding $.30 per mile one way ($100), for a total of $6,900. IDAHO R. CIV. P. 54(d)(1).

contends that even if this Court holds that the arbitration clause is enforceable, we should hold that her bad faith claim is not within the scope of the arbitration clause.

 Whether an arbitration clause in a contract requires arbitration of a particular dispute or claim depends upon its terms. When construing a contract, a court must first decide whether it is ambiguous, which is a question of law. *Howard v. Oregon Mut. Ins. Co.*, 137 Idaho 214, 46 P.3d 510 (2002). A contractual provision will be found ambiguous if it is reasonably subject to conflicting interpretations. *Id.* Because the arbitration clause at issue does not appear ambiguous on its face, nor has either party asserted that it contains ambiguity, this Court exercises free review over its interpretation. *Selkirk Seed Co. v. State Ins. Fund,* 135 Idaho 434, 18 P.3d 956 (2000). Interpretation of an unambiguous document is a question of law. *Western Heritage Ins. Co. v. Green,* 137 Idaho 832, 54 P.3d 948 (2002). The meaning of an unambiguous contract and the intent of the parties must be determined from the plain meaning of the words used. *Mutual of Enumclaw Life Ins. Co. v. Lincoln,* 131 Idaho 454, 958 P.2d 1140 (1997).

The relevant wording from the arbitration clause in the BlueShield policy states, "Any controversy or claim arising out of or relating to this Policy, or the breach thereof, shall be settled by arbitration." We have not previously construed the scope of an arbitration clause applying to "[a]ny controversy or claim arising out of or relating to" the contract. Other courts, however, have done so. In *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the United States Supreme Court stated that such language is "easily broad enough" to encompass a claim of fraud in the inducement regarding the contract in which the arbitration clause appeared. In *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), the Supreme Court held such language in the arbitration clause of a franchise agreement broad enough to cover statutory claims arising under the California Franchise Investment Law. When holding that an arbitration clause using such wording included

claims for fraudulent inducement and mutual mistake of fact, the Pennsylvania Supreme Court stated, "Broader language would be difficult to contrive." *Flightways Corp. v. Keystone Helicopter Corp.,* 459 Pa. 660, 331 A.2d 184, 185 (1975). The Fourth Circuit Court of Appeals characterized clauses using such language "to be broad arbitration clauses capable of an expansive reach," *American Recovery Corp. v. Computerized Thermal Imaging Inc.,* 96 F.3d 88, 93 (4th Cir.1996), "embrac[ing] every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute," *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.,* 863 F.2d 315, 321 (4th Cir.1988). Such language is broader in scope that an arbitration clause applying only to claims "arising under" the contract. *Mediterranean Enter., Inc. v. Ssangyong Corp.,* 708 F.2d 1458, 1464 (9th Cir.1983). When holding that an arbitration clause included tort claims of intentional interference with business relations, defamation, and conspiracy, the Alabama Supreme Court stated, "Moreover, it is often observed that the words 'relating to' in the arbitration context are given a broad construction." *Karl Storz Endoscopy–America, Inc. v. Integrated Med. Sys., Inc.,* 808 So.2d 999, 1013 (Ala.2001). In *Pierson v. Dean, Witter, Reynolds, Inc.,* 742 F.2d 334 (7th Cir.1984), the plaintiffs brought common-law tort claims against Dean Witter to recover damages regarding its management of their account. Based upon their "Customers Agreement" that provided for arbitration of any controversy "arising out of or relating to this contract or breach thereof," Dean Witter filed a motion to dismiss the common-law claims or, in the alternative, to stay them pending arbitration. The trial court denied the motion, and Dean Witter appealed. The Seventh Circuit Court of Appeals reversed, stating: "The arbitration clause in this case is broadly worded and encompasses any controversy arising out of or relating to the contract or its breach. Claims of fraud under a contract, breach of fiduciary duty, negligence, and gross negligence are not immune from arbitration under a broadly-worded valid arbitration clause." 742 F.2d at 338. Finally, in *Bos Material Handling, Inc. v. Crown Controls Corp.,* 186

Cal.Rptr. 740, 137 Cal.App.3d 99 (Cal.Ct.App. 1983), an equipment dealer filed a tort action against its supplier and others after the supplier terminated the written dealer agreement, which included an arbitration clause applicable to "[a]ny controversy or claim arising out of or relating to this agreement, or breach thereof." The complaint alleged tort claims of tortious breach of good faith and fair dealing, fraud, unfair competition, restraint of trade, and intentional interference with prospective advantage and contract, all grounded upon the termination of the dealer agreement. In holding that the tort claims were within the scope of the arbitration clause, the California Court of Appeals stated: "In the particular situation where contracts provide arbitration for ' "any controversy . . . arising out of or relating to the contract . . ." ' the courts have held such arbitration agreements sufficiently broad to include tort, as well as contractual, liabilities so long as the tort claims 'have their roots in the relationship between the parties which was created by the contract.' " 186 Cal.Rptr. at 742, 137 Cal.App.3d at 105 (quoting *Berman v. Dean Witter & Co., Inc.*, 119 Cal. Rptr. 130, 133, 44 Cal.App.3d 999, 1003 (Cal. Ct.App.1975)).

Other courts have generally agreed that whether a claim falls within the scope of an arbitration clause depends not on the characterization of the claim as tort or contract, but on the relationship of the claim to the subject matter of the arbitration clause. *Rodgers Builders, Inc. v. McQueen*, 76 N.C.App. 16, 331 S.E.2d 726 (1985). Arbitration clauses worded as applying to any claim or controversy "arising out of or relating to the contract" are sufficiently broad to include tort claims which arise out of or are related to the contract between the parties or their contractual relationship. *Id.*

For a tort claim to be considered as "arising out of or relating to" a contract, it must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself. *Seifert v. U.S. Home Corp.*, 750 So.2d 633 (Fla.1999); *Dusold v. Porta–John Corp.*, 167 Ariz. 358, 807 P.2d 526 (App.1990). The required relationship between the dispute and the contract does not exist simply because the dispute would not have arisen absent the existence of the contract between the parties. *Seifert v. U.S. Home Corp.*, 750 So.2d 633 (Fla.1999); *Dusold v. Porta–John Corp.*, 167 Ariz. 358, 807 P.2d 526 (App.1990). If the contract places the parties in a unique relationship that creates new duties not otherwise imposed by law, then a dispute regarding a breach of a contractually-imposed duty is one that arises from the contract. *Dusold v. Porta–John Corp.*, 167 Ariz. 358, 807 P.2d 526 (App.1990). Conversely, the dispute is not one arising out of the contract if the duty alleged to be breached is one imposed by law in recognition of public policy and is generally owed to others besides the contracting parties. *Id.*

For example, in *Seifert v. U.S. Home Corp.* a widow brought a wrongful death action arising from the death of her husband from carbon monoxide poisoning when the air conditioning system in their home picked up exhaust fumes from a car left running in the garage and distributed them into the house. The construction contract that she and her husband had executed with the builder contained an arbitration clause applicable to "[a]ny controversy or claim arising under or related to this Agreement." After the builder's motion to compel arbitration was denied, it appealed. In upholding the trial court, the Florida Supreme Court reasoned as follows:

> These allegations [of negligence and breach of the duty to warn] rely on obligations that would extend to anyone, third parties as well as the Seiferts, who might be injured by U.S. Home's tortious conduct. Indeed, it appears to be entirely fortuitous that it was Mr. Seifert, and not a guest or someone else in the house, who was injured as a result of the alleged neglect by U.S. Home. . . .
>
> While it is certainly true that this dispute would not have arisen but for the sales agreement between U.S. Home and the Seiferts, we conclude that the mere existence of such contract is not sufficient to compel that this dispute be arbitrated. None of the allegations assert that U.S. Home's duties or obligations arose from or were governed by the contract.

750 So.2d at 641–42 (footnote and citations omitted).

Likewise, in *Dusold v. Porta–John Corp.* the plaintiff brought an action to recover for personal injuries he allegedly received from chemicals he used to clean and service portable toilets owned by the defendant Porta–John. He obtained those chemicals from Porta–John and cleaned and serviced the toilets pursuant to a Service Contract Agreement that contained a clause requiring arbitration of "any controversy or claim arising out of, or relating to this agreement, or the breach thereof." The trial court granted Porta–John's motion to dismiss based upon the arbitration clause, and the plaintiff appealed. In reversing the dismissal and holding that the claim was not within the scope of the arbitration clause, the Arizona Court of Appeals reasoned as follows:

> Applying that rationale to this litigation, we note that Dusold alleged that his personal injuries occurred because Porta–John failed to warn him of the dangerous and toxic nature of its chemicals and failed to properly instruct him as to their safe use. Dusold does not contend that these duties to warn or instruct arose out of any contractual obligation of Porta–John under the licensing agreement between them. Rather, Dusold alleges that the duties to warn or instruct arose solely from Porta–John's obligations as a supplier of hazardous materials and such a supplier's duties are controlled by common law tort principles of products liability. The Arizona Supreme Court has recognized that when an injured buyer maintains a tort action on a theory of strict liability, "the essential nature of the action sounds in tort," even if the parties' relationship was formed by a contract, because "the liability of the seller would exist even without a contract." According to Dusold, the duties involved here would be owed to him by Porta–John even if he were a contractual stranger. We

agree. In our opinion, the resolution of this dispute can take place without any reference to or construction of the contract between the parties. As such, it is not subject to the arbitration clause in the contract requiring arbitration in Michigan.

807 P.2d at 531.

■ In the instant case, Ms. Lovey has alleged a claim of tortious bad faith.[5] To recover on that claim, she must show: (1) BlueShield intentionally and unreasonably denied or delayed payment; (2) her claim was not fairly debatable; (3) BlueShield's denial or delay was not the result of good faith mistake; and (4) the resulting harm was not fully compensable by contract damages. *Simper v. Farm Bur. Mut. Ins. Co. of Idaho,* 132 Idaho 471, 974 P.2d 1100 (1999). The duty allegedly breached by BlueShield is based solely upon the insurance policy. *White v. Unigard Mut. Ins. Co.,* 112 Idaho 94, 730 P.2d 1014 (1986). That duty does not apply to the public in general or to anyone who is not a party to the policy. *Id; Idaho State Ins. Fund v. Van Tine,* 132 Idaho 902, 980 P.2d 566 (1999). In order to prove her bad faith claim, Ms. Lovey must establish that she was entitled to recover under the BlueShield policy. *Robinson v. State Farm Mut. Auto. Ins. Co.,* 137 Idaho 173, 45 P.3d 829 (2002). Establishing that claim will require reference to or construction of some portion of the policy itself. Thus, Ms. Lovey's bad faith claim is a "claim arising out of or relating to" the BlueShield policy and is within the scope of the arbitration clause.

## C. Is Either Party Entitled to an Award of Attorney's Fees on Appeal?

■ BlueShield requests an award of attorney's fees on appeal pursuant to Idaho Appellate Rule 41. It has not cited any statutory or contractual provision authorizing such award. Rule 41 specifies the procedure for requesting an award of attorney fees on

---

5. Ms. Lovey entitled count two of her complaint "Bad Faith." After re-alleging the breach of contract allegations, she alleged, "Defendant's decision not to pay Plaintiff's expenses related to her aortic bypass surgery was unreasonable and in bad faith." She also alleged that she suffered damage to her credit and emotional damages, harm that would not be fully compensable by

contract damages. These allegations were sufficient to allege a claim for the tort of bad faith. *Beco Const. Co., Inc. v. City of Idaho Falls,* 124 Idaho 859, 865 P.2d 950 (1993) (allegation that actions of defendant constituted "an act of bad faith" alleged the tort of bad faith and not the breach of the covenant of good faith and fair dealing).

appeal, but it does not provide the authority for awarding attorney fees. *Camp v. East Fork Ditch Co., Ltd.,* 137 Idaho 850, 55 P.3d 304 (2002). Where BlueShield has failed to cite any authority authorizing an award of attorney fees to it, we will not address that issue. *Id.*

Ms. Lovey requests an award of attorney's fees on appeal pursuant to Idaho Code § 41–1839. Because she did not prevail on the appeal, she is not entitled to an award under that statute. *Vaught v. Dairyland Ins. Co.,* 131 Idaho 357, 956 P.2d 674 (1998).

### IV. CONCLUSION

We reverse the order of the district holding that the arbitration clause in the BlueShield policy is unenforceable, and we remand this case for further proceedings consistent with this opinion. We award costs on appeal, but not attorney's fees, to BlueShield.

Chief Justice TROUT and Justices SCHROEDER, WALTERS and KIDWELL concur.