# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 40809-2013

CLEARWATER REI, LLC, an Idaho
limited liability company; BARTON
COLE COCHRAN; CHAD JAMES
HANSEN; RONALD D. MEYER;
CHRISTOPHER J. BENAK; ROB
RUEBEL; and RE CAPITAL
INVESTMENTS, LLC, a Delaware limited
liability company,

Plaintiffs-Counterdefendants-
Respondents,

v.

MARK BOLING,

Defendant-Counterclaimant-
Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, December 2013 Term

2014 Opinion No. 18

Filed: February 11, 2014

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, in and for Ada County. The Hon. Deborah A. Bail, District Judge.

The order of the district court is <u>affirmed</u>.

Mark A. Boling, Lake Forest, California, argued for himself.

Rebecca A. Rainey, Boise, argued for respondents.

_____

EISMANN, Justice.

This is an appeal out of Ada County from an order denying a motion to compel nonparties to a contract to arbitrate pursuant to an arbitration clause in the contract. We affirm the order of the district court.

## I.
## Factual Background.

In February 2010, Mark Boling, an attorney residing in California, received a packet dated February 1, 2010, from Clearwater Real Estate Investments. The packet included a cover letter with the letterhead of Clearwater Real Estate Investments, information about Clearwater Real Estate Investments, and information about Clearwater 2008 Note Program, LLC. The cover letter stated that the note program paid "9% Annual Interest (paid monthly)." The packet included an investment summary and a memorandum dated August 29, 2008, which described the note program in detail. The notes were offered for sale in reliance upon an exemption from the registration requirements of the Securities Act of 1933. In essence, the program offered persons to whom Clearwater 2008 Note Program, LLC, could sell its securities under that exemption the opportunity to purchase interests in promissory notes it issued. It would use the proceeds from the notes to invest in real estate acquisition and development projects, and the revenues from the real estate investments would be used to pay the notes. The notes were due on December 31, 2015, and RE Capital Investments, LLC, guaranteed the payment of the principal amount of the notes.

On February 12, 2010, Mr. Boling signed a subscription agreement for the note program and submitted it with a check for $50,000 to invest in the program. The subscription agreement stated that the offer to enter into the agreement was made by "Clearwater 2008 Note Program, LLC, an Idaho limited liability company." On February 26, 2010, Clearwater 2008 Note Program, LLC, signed the subscription agreement by its sole member, Clearwater REI, LLC. Bart Cochran signed on behalf of Clearwater REI, LLC, as its manager.

By letter dated March 1, 2010, Clearwater Real Estate Investments sent Mr. Boling a letter addressed to "Dear Valued Customer" thanking him for choosing Clearwater Real Estate Investments and confirming that his subscription in Clearwater 2008 Note Program, LLC, in the principal amount of $50,000 had been accepted. Enclosed with the letter were a certificate stating that Mr. Boling had invested $50,000 in Clearwater 2008 Note Program, LLC, and a copy of a note dated August 29, 2008, that was executed by Clearwater 2008 Note Program, LLC, as maker. The note stated that the payees were listed in Exhibit A attached to the note.

The subscription agreement contained a provision requiring binding arbitration to resolve any dispute, controversy, or other claim arising under, out of, or relating to the agreement. Mr. Boling did not receive the payments anticipated, and on February 15, 2012, he filed a demand for commercial arbitration with the American Arbitration Association, seeking to arbitrate claims

against Clearwater 2008 Note Program, LLC; Clearwater REI, LLC; Clearwater Real Estate Investments; RE Capital Investments, LLC; Barton Cole Cochran; Chad James Hansen; Ronald D. Meyer; Christopher J. Benak; and Rob Ruebel. The alleged claims were violations of the Idaho Consumer Protection Act against all of the respondents; breach of contract against Clearwater 2008 Note Program, LLC; and breach of the guaranty agreement against RE Capital Investments, LLC, a Delaware limited liability company.

Clearwater REI, LLC, was the sole member of Clearwater 2008 Note Program, LLC. Messrs. Meyer and Benak each owned a limited liability company, and each of those two companies owned a 50% interest in RE Capital Investments, LLC, which owned 55.84% of Clearwater Real Estate Investments, LLC. Messrs. Cochran and Hansen each owned a limited liability company, each of which owned a 19.58% interest in Clearwater Real Estate Investments, LLC. Messrs. Meyer, Benak, Cochran, and Hansen were officers of Clearwater 2008 Note Program, LLC, and they were also key management of Clearwater REI, LLC. Mr. Ruebel was a regional vice president of sales for Clearwater Real Estate Investments, LLC.

On May 14, 2012, Clearwater REI, LLC; Barton Cole Cochran; Chad James Hansen; Ronald D. Meyer; Christopher J. Benak; Ron Ruebel; and RE Capital Investments, LLC, filed this action seeking a stay of the arbitration proceedings on the ground that none of them were parties to the subscription agreement. On June 28, 2012, Mr. Boling filed an answer asking that they be denied any relief. On the same day, Mr. Boling also filed a counterclaim against them and a third-party complaint against Clearwater Real Estate Investments, LLC, seeking to recover damages for alleged breaches of the Idaho Consumer Protection Act and a counterclaim against RE Capital Investments, LLC, seeking to recover damages for breach of the guaranty. On July 6, 2012, RE Capital Investments had filed a petition under Chapter 7 of the Bankruptcy Code. Because the issue on appeal concerns Mr. Boling's contention that the Counterdefendants are required to arbitrate his counterclaims against them, for simplicity we will refer to them as the Counterdefendants.

On July 16, 2012, the Counterdefendants filed a motion to dismiss the counterclaims on the ground that they could not be asserted in response to a petition to stay arbitration. On August 17, 2012, they also filed a motion to stay arbitration on the ground that they had not agreed to arbitration. In his written response, Mr. Boling stated that he would not seek arbitration if he could pursue his claims in this lawsuit. He wrote that "he does <u>not</u> intend to [compel

3

arbitration] <u>if</u> the Court allows Boling's counterclaims to be prosecuted in this lawsuit." He also stated that he preferred to pursue his claims in this litigation and that he would accept the Counterdefendants' objection to arbitration if he was allowed to do so. He wrote:

> If the Court allows Boling's counterclaims to be prosecuted in this lawsuit, which all Plaintiffs/Counter-Defendants have been <u>served</u> with the counterclaims and <u>discovery is pending</u>, then Defendant Boling <u>accepts</u> Plaintiffs' objection to arbitrate and decision not to arbitrate claims against Plaintiffs/Counter-Defendants. Judicial intervention in this lawsuit is Boling's preferred method to resolve his ICPA claims because 1) it allows Boling the right to judicial discovery of information exclusively in Plaintiffs/Counter-Defendants' possession, which is denied by arbitration, 2) none of the proposed arbitrators have any experience in handling unique ICPA claims or issues, and 3) for judicial economy, the prosecution of the counterclaims is significantly advance [sic] at this time.

On October 16, 2012, the district court entered an order granting the motion to stay arbitration as to the Counterdefendants and denying their motion to dismiss the counterclaim. The basis for the order granting the stay was that these parties had not agreed to arbitration.

On December 10, 2012, Mr. Boling filed a motion seeking to compel the Counterdefendants to arbitrate. In his affidavit supporting that motion, he admitted that he had previously lied to the district court when he represented that he preferred to litigate his claims in this lawsuit and would not pursue arbitration if he was permitted to do so. He had wanted to conduct discovery in this lawsuit in the hope of obtaining evidence to support a motion to compel arbitration. In his affidavit, he stated, "I intended that the substantive responses to the pending discovery and production of documents would support the Motion to Compel Arbitration." Thus, he admitted that once he had conducted discovery, he intended to seek a court order to compel arbitration. On February 7, 2013, the district court entered an order granting the Counterdefendants' motion to stay arbitration.[1] Mr. Boling then timely appealed.

## II.
### Did the District Court Err in Granting the Counterdefendants' Motion to Stay Arbitration?

---

[1] In its order, the district court stated that "[t]he motion to stay arbitration as to Barton Cole Cochran, Chad James Hansen, Ronald D. Meyer, Christopher Benak, and Ron Ruebel and Clearwater Real Estates Investments LLC is granted" rather than that Mr. Boling's motion to compel arbitration was denied.

4

Any order appealable under the Uniform Arbitration Act is appealable as a matter of right. I.A.R. 11(a)(8). The Act provides that an appeal may be taken from "[a]n order granting an application to stay arbitration made under section 7-902(b), Idaho Code." I.C. § 7-919(a)(2) Therefore, the order granting the Counterdefendants' motion to stay arbitration was appealable as a matter of right.[2]

The subscription agreement that was executed by Mr. Boling and Clearwater 2008 Note Program, LLC, provided that the agreement "shall be construed in accordance with and governed by the laws of the State of Idaho without regard to its choice of law provisions." Therefore, the Idaho Uniform Arbitration Act, I.C. §§ 7-901 through 7-922, applies as the substantive law in this case, including substantive issues regarding arbitration. *Moore v. Omnicare, Inc.*, 141 Idaho 809, 815, 118 P.3d 141, 147 (2005).

Idaho Code section 7-901 provides, "A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." In this case, Mr. Boling and Clearwater 2008 Note Program, LLC, entered into a written agreement that included a clause requiring that "any dispute, controversy or other claim arising under, out of or relating to this Agreement or any of the transactions contemplated hereby, or any amendment thereof, or the breach or interpretation hereof or thereof," be resolved by binding arbitration. The Counterdefendants were not parties to that contract. The issue is therefore whether there is a legal basis under Idaho law for compelling them to arbitrate Mr. Boling's counterclaims against them.[3] Mr. Boling raises four arguments that he contends entitle him to compel arbitration as to the Counterdefendants.

**(1) The Counterdefendants are within the scope of the arbitration clause.** Mr. Boling argues that there is no dispute that there is an arbitration clause in the contract between

---

[2] For some reason, the district court included a Rule 54(b) certificate in its order. Under Rule 54(b) of the Idaho Rules of Civil Procedure, a partial judgment can be certified as final by the inclusion of a certificate as specified in the rule. The court's order did not constitute a judgment because it did not meet the definition of a judgment under Rule 54(a) of the Idaho Rules of Civil Procedure. Because the order did not constitute a judgment, including a Rule 54(b) certificate in it was meaningless.

[3] The Counterdefendants did not request a jury trial regarding the counterclaims, so we need not address the impact of the right to a jury trial under Article I, § 7, of the Constitution of the State of Idaho.

him and Clearwater 2008 Note Program, LLC; that the issue of who is bound by that agreement is simply a matter of the scope of the arbitration clause; and that doubts about the scope are to be resolved in favor of coverage. That argument misstates the meaning of the scope of an arbitration clause. The scope of an arbitration clause refers to the issues or claims that are subject to arbitration under the clause, not the persons who are bound by the clause. *Mason v. State Farm Mut. Auto. Ins. Co.*, 145 Idaho 197, 200 n.1, 177 P.3d 944, 947 n.1 (2007) ("[S]tates apply general state law principles of contract interpretation to resolve the issue whether the parties entered into a valid and enforceable written agreement to arbitrate, and to determine the scope of the arbitration provision."); *Lovey v. Regence BlueShield of Idaho*, 139 Idaho 37, 47, 72 P.3d 877, 887 (2003) ("Other courts have generally agreed that whether a claim falls within the scope of an arbitration clause depends not on the characterization of the claim as tort or contract, but on the relationship of the claim to the subject matter of the arbitration clause."); *Lewis v. CEDU Educ. Servs., Inc.*, 135 Idaho 139, 145, 15 P.3d 1147, 1153 (2000) (even though the claims alleged by the Counterdefendants were referable to arbitration under the arbitration clause, there was no basis to compel arbitration against a defendant who did not have a written agreement to arbitrate with either plaintiff); *Rath v. Managed Health Network, Inc.*, 123 Idaho 30, 31, 844 P.2d 12, 13 (1992) (a covered enrollee under a health plan provided by his employer was not required to arbitrate where the contract between the employer and the insurer only required arbitration regarding "[a]ny Controversy between the parties to this Agreement"). The fact that the claims alleged against the Counterdefendants would be within the scope of the arbitration clause is irrelevant unless the Counterdefendants are bound by the agreement to arbitrate. The policy favoring arbitration does not justify compelling arbitration by those who have not consented to it.

One of the cases cited by Mr. Boling expressly stated that the policy favoring arbitration agreements did not apply to determining whether a particular party was bound by an arbitration agreement. In *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 92 Cal. Rptr. 3d 534 (Cal. App. 2009), the court stated that "where the question is whether a particular party is bound by the arbitration agreement, the liberal federal policy favoring arbitration agreements, which is 'best understood as concerning "the scope of arbitrable issues," [citation],' is inapposite." *Id.* at 220, 92 Cal. Rptr. 3d at 542.

6

**(2) The Counterdefendants are agents of Clearwater 2008 Note Program, LLC.**
Under well-established agency principles, "an agent by making a contract only on behalf of a disclosed principal, whom he was power to bind, does not thereby become liable for its non performance." *Gen. Motors Acceptance Corp. v. Turner Ins. Agency, Inc.*, 96 Idaho 691, 697, 535 P.2d 664, 670 (1975). By making a contract on behalf of the principal, the agent does not guarantee either the honesty or the solvency of the principal. *Id*.

With respect to an arbitration clause in a contract executed by an agent on behalf of the agent's principal, it is recognized that "[a]n agent may invoke benefits of a principal's arbitration agreement to arbitrate claims with the agreement's counter party even where the agent is not a signatory." 4 Am. Jur. 2d *Alternative Dispute Resolution* § 60 (2007). In such circumstances, the agent, by seeking to enforce the arbitration clause, is consenting to arbitration, and the party whom the agent seeks to compel into arbitration was a signatory to the arbitration agreement.

In this case, no agent of Clearwater 2008 Note Program, LLC, is attempting to invoke the arbitration agreement against Mr. Boling. Mr. Boling cites in a footnote two California cases holding that an agent of a party to a contract containing an arbitration clause can be required to arbitrate claims against the agent.[4] However, the one Idaho case that has addressed the issue has held that the agent of a signatory to a contract containing an arbitration clause could not be compelled to arbitrate. *Lewis*, 135 Idaho at 145, 15 P.3d at 1153. In *Lewis*, this Court held: "There is no written agreement to arbitrate between CES [a signatory's agent] and Dark or Lewis [the plaintiffs]. Consequently, there is no basis to compel arbitration as to the claims of Dark and Lewis and CES." *Id*. Compelling a nonparty to a contract containing an arbitration clause to submit to arbitration because the nonparty is an agent of one of the parties to the contract would

---

[4] The first case is *Rowe v. Exline*, 153 Cal. App. 4th 1276, 63 Cal. Rptr. 3d 787 (Cal. App. 2007). It did not involve compelling an agent of a signatory to a contract containing an arbitration clause to arbitrate claims against the agent. The issue was whether two agents who signed the contract on behalf of their principal could compel arbitration of the claims against them when they were sued along with the principal. However, the opinion in *Rowe* included a citation to the second case cited by Mr. Boling, which is *Harris v. Superior Court*, 188 Cal. App. 3d 475, 233 Cal. Rptr. 186 (Cal. App. 1986). In *Harris*, the plaintiffs were a mother and daughter who were enrollees in a prepaid health services program as a benefit of the father's employment. He had signed an application which contained a clause requiring arbitration for any claims asserted against that program and against other specified entities, including a medical group. *Id*. at 477, 233 Cal. Rptr. at 187. The lawsuit alleged negligence by the physician during the daughter's birth. The court held that the physician could be required to join the arbitration against the hospital and its holding company because he was an employee of the medical group, which was a professional corporation, and he provided medical care to the medical group's patients, including the plaintiffs. The court held that that relationship was sufficient to bind the physician to the arbitration agreement which expressly named the medical group as being covered by the clause. *Id*. at 478, 233 Cal. Rptr. at 188.

be inconsistent with Idaho Code section 7-901 which states that "a provision in a written contract to submit to arbitration any controversy thereafter arising *between the parties* is valid, enforceable and irrevocable." (Emphasis added.) None of the Counterdefendants were parties to the subscription agreement.

**(3) The Counterdefendants are third-party beneficiaries of the subscription agreement.** Mr. Boling contends that the Counterdefendants are third-party beneficiaries to the subscription agreement because the proceeds received from investments in the promissory note issued by Clearwater 2008 Note Program, LLC, were used in part to operate the Counterdefendants' related businesses and to pay compensation to the Counterdefendants. The subscription agreement signed by Mr. Boling stated that it was "subject to the terms, conditions, acknowledgments, representations and warranties stated herein and in the Confidential Private Placement Memorandum." Included in the memorandum was a statement that "[t]he Manager [Clearwater REI, LLC] or its Affiliates will receive a fee equal to 2.55% of the Gross Proceeds [from the sale of the notes]" and that "[t]he Company [Clearwater 2008 Note Program, LLC] will receive up to 0.40% of the Gross Proceeds." According to Mr. Boling, this shows that the Counterdefendants were third party beneficiaries of the subscription agreement. His argument is erroneous for two reasons.

First, Idaho Code section 29-102 provides, "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Idaho Code section 29-102 allows a contract that was made expressly for the benefit of a third person to be enforced by him. "[A] third-party beneficiary must comply with all the terms and provisions of an agreement to the same extent as they apply to the beneficiary." *Lewis*, 135 Idaho at 143, 15 P.3d at 1151. If the third-party beneficiary seeks to enforce the contract, he is agreeing to be bound by its provisions. Idaho Code section 29-102 does not give a party to a contract the right to enforce the contract against a nonparty on the ground that the nonparty is a third-party beneficiary to the contract. In the instant case, the Counterdefendants did not seek to enforce the subscription agreement signed by Mr. Boling. Therefore, Idaho Code section 29-102 does not apply, and the arbitration clause in the subscription agreement cannot be enforced against them based upon the contention that they are third-party beneficiaries to the agreement.

Second, "[t]he third party must show the contract was made primarily for his benefit; it is not sufficient that the third party is a mere incidental beneficiary to the contract." *Partout v.*

8

*Harper*, 145 Idaho 683, 687, 183 P.3d 771, 775 (2008). A nonparty to a contract is not a third party beneficiary merely because the nonparty may receive a financial benefit from the contract. For example, in *Idaho Power Co. v. Hulet*, 140 Idaho 110, 90 P.3d 335 (2004), the lessor had purchased the lessee's dairy farm and then leased the real property back to him. *Id*. at 111, 90 P.3d at 336. In the lease agreement, the lessor agreed to pay the lessee's past-due electric bills on his behalf. *Id..* The electric utility sued the lessor to collect the lessee's past-due bills, and the district court granted summary judgment in favor of the utility company on the ground that it was a third-party beneficiary of the lease agreement. *Id*. at 112, 90 P.3d at 337. On appeal, we reversed because the lease agreement was not made primarily for the benefit of the utility. We stated that the lessor's agreement to pay the power bill was not intended to specifically benefit the utility "but as consideration of the agreement to benefit [the lessee] who sought a situation in which he would be able to continue to run his dairy business." *Id*. at 114, 90 P.3d at 339. In the instant case, it is clear that Mr. Boling did not enter into the subscription agreement primarily to benefit any or all of the Counterdefendants. In fact, he does not even contend that he did so. Rather, he obviously entered into the agreement in order to obtain a 9% return on his investment. There are simply no facts in the record indicating that Mr. Boling and Clearwater 2008 Note Program, LLC, entered into the subscription agreement primarily to benefit the Counterdefendants.

**(4) The Counterdefendants are required to arbitrate under the doctrine of equitable estoppel.** Mr. Boling contends that the Counterdefendants are required to arbitrate under the doctrine of equitable estoppel. Under Idaho law, the elements of equitable estoppel are:

> (1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) that the party asserting estoppel did not know or could not discover the truth; (3) that the false representation or concealment was made with the intent that it be relied upon; and (4) that the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice.

*City of McCall v. Buxton*, 146 Idaho 656, 664, 201 P.3d 629, 637 (2009). There is no contention that the Counterdefendants, or any of them, made a false representation or concealed a material fact regarding their willingness to arbitrate Mr. Boling's counterclaims. In fact, the only misrepresentation regarding arbitration shown in the record is Mr. Boling's false statement that he would not seek to compel arbitration if he could engage in discovery.

9

In support of his assertion that the Counterdefendants should be equitably estopped from refusing to arbitrate, Mr. Boling cites *Sunkist Soft Drinks, Inc., v. Sunkist Growers, Inc.* 10 F.3d 753 (11th Cir. 1993), and *Molecular Analytical Systems v. Ciphergen Biosystems, Inc.*, 186 Cal. App. 4th 696, 111 Cal. Rptr. 3d 876 (Cal. App. 2010). In *Sunkist*, the court held under federal law that if a party to an agreement containing an arbitration clause asserts claims in litigation against a nonparty to the agreement, the party to the contract can be compelled by the nonparty to engage in arbitration when the contracting party's claims are intimately founded in and intertwined with the underlying contract obligations. 10 F.3d at 757-58.[5] *Molecular Analytical* held that "if a plaintiff relies on the terms of an agreement to assert his or her claims against a nonsignatory defendant, the plaintiff may be equitably estopped from repudiating the arbitration clause of that very agreement." 186 Cal. App. 4th at 714, 111 Cal. Rptr. 3d at 893. Even if we were to adopt the holdings in those cases, they would not require the Counterdefendants to arbitrate in this case. As stated, in those cases the party equitably estopped was a signatory to a contract containing an arbitration clause that brought claims against a nonsignatory to the contract. A nonsignatory to the contract is not equitably estopped from refusing to arbitrate. Applying those cases to this case would merely result in holding that if the Counterdefendants herein sought to arbitrate Mr. Boling's counterclaims against them, Mr. Boling would be equitably estopped from refusing to arbitrate. Mr. Boling does not cite any authority that would hold the Counterdefendants herein are equitably estopped from refusing to arbitrate.

### III.
### Are Counterdefendants Entitled to an Award of Attorney Fees on Appeal?

The Counterdefendants seek an award of attorney fees on appeal under Idaho Code section 12-121. We will not award attorney fees on appeal under that statute if the losing party brought the appeal in good faith and presented a genuine issue of law. *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). "In normal circumstances, attorney fees will only be awarded when this court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." *Id.* This

---

[5] The decision in *Sunkist* was abrogated by *ArthurAndersen LLP v. Carlisle*, 556 U.S. 624 (2009), which held that state law is controlling as to who is bound by an agreement to arbitrate. *Id*. at 630-31.

appeal does not present a genuine issue of law. We award the Counterdefendants attorney fees on appeal pursuant to Idaho Code section 12-121.

## IV.
## Conclusion.

We affirm of order of the district court, and we award respondents costs and reasonable attorney fees on appeal.

Chief Justice BURDICK, Justices J. JONES, HORTON, and Justice Pro Tem SCHROEDER **CONCUR.**